THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARNELL ALLEN *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—88—2293

Opinion filed September 30, 1991.

Randolph N. Stone, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Judith M. Pietrucha, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a bench trial, Darnell Allen (Darnell) and his brother, Melvin Allen (Melvin) (both of whom are hereinafter collectively referred to as defendants), were convicted of multiple counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)), criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)), and aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(c)), and were sentenced to concurrent terms of six years' imprisonment. On appeal, defendants argue that the evidence was insufficient to prove them guilty beyond a reasonable doubt. Defendants also assert that they were denied the effective assistance of counsel, because their attorney was facing disciplinary proceedings that caused him to render *per se* ineffective assistance and led him to suffer from a *per se* conflict of interest. Defendants also contend, and the State concedes, that certain counts of their convictions should be vacated. We affirm in part and reverse in part.

The charges against defendants stemmed from acts they allegedly committed between May 1, 1986, and August 23, 1986, while the defendants babysat the two children of a neighbor, Ms. H. The children were a boy, M.H., who was 10 years old at the time of the offenses, and a girl, L.H., who was six at the time of the offenses.

The children's mother, Ms. H., testified that the defendants lived in a nearby apartment, that she had known the defendants for the last three years, and that she was friendly with the defendants' mother. Ms. H. stated that the defendants babysat her children four or five times a

month between May 1, 1986, and August 23, 1986. She identified the defendants in court.

Ms. H. testified that on September 22, 1986, as she was bathing L.H., the child suddenly began to scream while she was being washed in her vaginal area, which Ms. H. discovered to be red and yellowish. The child refused to answer her mother's questions regarding the cause of this condition. Ms. H. asked her son, M.H., what had happened. The boy responded that defendants had been in the apartment and had "freaked" the children. Ms. H. testified that the term "freaked" meant that the defendants had been "having sex with" the children. Ms. H. testified that M.H. informed her that defendant Darnell had sexually assaulted him. Thereafter, L.H. told her mother that both defendants had sexually assaulted her.

On cross-examination, Ms. H. acknowledged that L.H. had been sexually assaulted by the child's uncle in 1984, and stated that the uncle had had no further contact with L.H. after the incident. Ms. H. also testified that she had caught defendant Darnell sexually assaulting L.H. in December 1985. On this occasion, Ms. H. did not report the incident to the police, but informed the defendants' mother.

Both children testified against the defendants at trial. L.H. testified that she remembered the defendants were at her home when it was warm outside and school was not in session. She could not recall the precise dates of their visits, although she stated that they occurred in the summer of 1986. L.H. testified in detail to a sexual act that was performed upon her by defendant Melvin during this period of time. In addition, she testified in detail to having seen defendant Darnell sexually assault her brother, M.H.

L.H. also testified that defendant Darnell had assaulted her, but stated that this occurred in December 1985, and that her mother had caught defendant Darnell during this incident. L.H. testified that she was not assaulted by defendant Darnell after December 1985, but was only assaulted by defendant Melvin during the summer of 1986. The girl identified both defendants at trial, and with the use of anatomical dolls, L.H. demonstrated how the defendants had assaulted her. On cross-examination, L.H. testified that she remembered having been sexually assaulted by her uncle on one occasion, and that this incident occurred after she had been assaulted by defendant Darnell.

The son of Ms. H., M.H., also testified at trial that he remembered two incidents with defendants that took place in the summer of 1986. He recounted in detail the acts performed upon him by defendant Melvin on these two occasions, and recalled in detail having seen defendant Darnell perform sexual acts upon his sister, L.H., during these incidents.

The boy testified that defendants told him they would hurt him if he ever disclosed what had occurred. M.H. identified defendant Melvin in court and identified defendant Darnell through a photograph.

Dr. Steven Sheldon, a licensed physician and surgeon specializing in pediatrics and child abuse, testified as an expert in pediatrics on behalf of the State. Dr. Sheldon stated that he examined both children on September 24, 1986. After giving the details of these examinations, the physician stated that, in his medical opinion, L.H. and M.H. had recently been sexually assaulted. Dr. Sheldon also testified that, in his opinion, each child had suffered chronic sexual abuse, *i.e.*, repeated sexual assaults over a period of time. However, the physician stated that he could not determine for how long these assaults had continued. Dr. Sheldon also testified on cross-examination that M.H. had told the physician that M.H. had been sexually assaulted by his uncle.

It was stipulated at trial that, at the time of the offenses, defendant Darnell was 17 years of age and that defendant Melvin was 16 years old. Chicago police detective William Facchini, who spoke with the defendants after their arrest in September 1986, testified that defendant Melvin waived his *Miranda* warnings during police questioning. According to Detective Facchini, defendant Melvin stated that he and his brother "had been freaking the two children off and on for the past two years." Defendant Melvin also said that he had been caught about two years earlier for the same conduct and had received a beating for it from his mother. The detective stated that he understood the word "freaking" to mean sexual contact.

The defendants presented one witness in their behalf at trial, 15-year-old Janice Dorkin (Janice), who testified that she knew both the children and the defendants. According to Janice, M.H. told her, shortly before the defendants' trial began, that the defendants had not assaulted M.H. or his sister. Janice testified that M.H. informed her that M.H. had been assaulted by his uncle. In addition, Janice recalled that L.H. had told her that L.H.'s uncle had sexually assaulted L.H.

Based upon this evidence, the trial court found defendants guilty of multiple counts of aggravated criminal sexual assault, criminal sexual assault, and aggravated criminal sexual abuse. The defendants were sentenced to concurrent terms of six years' imprisonment for these offenses. Their appeal followed.

I

Defendants argue that the State's evidence was insufficient to prove them guilty beyond a reasonable doubt. Defendants maintain that their convictions should be reversed because the evidence against them was

not clear and convincing or substantially corroborated. See, *e.g., People v. Cole* (1990), 193 Ill. App. 3d 990, 997-1001, 550 N.E.2d 723 (Steigmann, J., specially concurring) (historical review of case law development of standard requiring that proof in sex offense cases be clear and convincing or substantially corroborated).

Recent Illinois decisions have rejected this heightened standard in appellate review of sexual offense cases. (*People v. Wheeler* (1991), 216 Ill. App. 3d 609; *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 879-80, 572 N.E.2d 1219; *People v. Stengel* (1991), 211 Ill. App. 3d 337, 346, 570 N.E.2d 391; *People v. Nicholl* (1991), 210 Ill. App. 3d 1001, 1012, 569 N.E.2d 604; *People v. Westfield* (1990), 207 Ill. App. 3d 772, 777, 566 N.E.2d 392; *People v. Roy* (1990), 201 Ill. App. 3d 166, 185, 558 N.E.2d 1208; *People v. James* (1990), 200 Ill. App. 3d 380, 384, 558 N.E.2d 732.) Instead, Illinois jurisprudence now favors the test applicable in other criminal cases, *viz.,* whether the evidence, viewed in the light most favorable to the State, would support a rational trier of fact's determination that the essential elements of the crime have been proved beyond a reasonable doubt. (See, *e.g., People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.) This court has also adopted the newer, uniform standard of appellate review in sex offense cases. *People v. Casiano* (1991), 212 Ill. App. 3d 680, 689, 571 N.E.2d 742; *People v. Byrd* (1990), 206 Ill. App. 3d 996, 1006, 565 N.E.2d 176.

In light of this precedent, we need not and do not consider whether the testimony of the children in the instant cause was clear and convincing or substantially corroborated. Rather, our inquiry is limited to whether the evidence, when considered in the light most favorable to the State, supports the trial court's determination that defendants were guilty of the sexual assaults of L.H. and M.H. In this regard, we must decide whether the State's evidence is so unsatisfactory or improbable that there remains a reasonable doubt of the defendants' guilt. *People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

Defendants do not dispute the State's proof that both children were subjected to repeated sexual assaults over an indefinite period of time. Defendants also do not question that the acts inflicted upon the children amounted to prohibited sexual assaults. Rather, defendants challenge the sufficiency of the State's evidence with respect to whether it was the defendants who committed these sexual assaults. Based upon our review of the record, we find the evidence sufficient to sustain defendants' convictions.

We consider first the evidence against defendant Melvin, who was convicted of the aggravated criminal sexual assaults of L.H. (counts III

and IV, charging violations of section 12—14(b)(2)(i) (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(2)(i)) (accused under 17 and victim under 9)) and the criminal sexual assault of M.H. (count V, charging violation of section 12—13(a)(2) (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(2)) (accused knew victim unable to understand nature of act or give knowing consent)). Defendant Melvin was 16 at the time of these offenses; L.H. was six years old, and M.H. was 10. Defendant Melvin was also convicted of other offenses which are vacated below.

■ Regarding defendant Melvin's conviction for the aggravated criminal sexual assaults of L.H. and the criminal sexual assault of M.H., Chicago police detective Facchini testified that defendant Melvin admitted that he had "freaked" both victims on multiple occasions while babysitting the children during the summer of 1986. M.H. testified that he had been sexually assaulted by defendant Melvin on two occasions in the summer of 1986. L.H. also testified that defendant Melvin performed sexual acts upon her during this period of time. The children's mother, Ms. H., stated that L.H. told her she had been assaulted by defendant Melvin. Physical examinations of the children established that they had been subjected to recent sexual assaults, and that these assaults had occurred repeatedly over an indefinite period of time. This evidence was sufficient to prove defendant Melvin guilty beyond a reasonable doubt of the aggravated criminal sexual assault of L.H. and the criminal sexual assault of M.H.

Defendant Darnell was convicted for the aggravated criminal sexual assaults of L.H. (counts I and II, charging violations of section 12—14(b)(1) (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)) (accused 17 or over and victim under 13)) and the aggravated criminal sexual assault of M.H. (count IX, charging same violation as counts I and II). Defendant Darnell was 17 at the time of these offenses; to restate, L.H. was six years of age and M.H. was 10 years old. Defendant Darnell was also convicted of other offenses which are vacated below.

■ Regarding the evidence against defendant Darnell for the aggravated criminal sexual assaults of both children, L.H. testified to having seen this defendant perform sexual acts upon her brother, M.H., during the summer of 1986. In addition, L.H. stated that she had also been sexually assaulted by defendant Darnell. Ms. H. also testified that both children told her that they had been sexually assaulted by defendant Darnell during the summer of 1986. Physical examinations of the victims revealed that they had suffered recent sexual assaults and that these assaults had been committed repeatedly over an indefinite period of time. We find this evidence sufficient to prove defendant Darnell

guilty beyond a reasonable doubt of the aggravated criminal sexual assault of both victims.

Defendants point to certain inconsistencies in the children's testimony regarding which of the defendants performed sexual acts upon them and with respect to when these assaults occurred. In addition, defendants note that L.H. admitted that she had been sexually assaulted on one occasion by her uncle, and that M.H. told Dr. Sheldon that he had been sexually assaulted by his uncle. Defendants also observe that the children's trial testimony is not wholly consistent with what the children told their mother, Ms. H.

■■ "In a bench trial it is for the trial judge to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317; see also *People v. Hall* (1990), 194 Ill. App. 3d 532, 551 N.E.2d 763; *People v. Hutson* (1987), 153 Ill. App. 3d 1073, 506 N.E.2d 779.) It was the province of the trial court to resolve inconsistencies and conflicts in the State's evidence with respect to whether it was the defendants who had sexually assaulted the children, with regard to which of the defendants performed sexual acts upon the children, and with respect to whether these assaults occurred in the summer of 1986. (See *People v. Lemons* (1991), 210 Ill. App. 3d 33, 568 N.E.2d 1380; *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208; *People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376; *People v. Escobedo* (1986), 151 Ill. App. 3d 69, 502 N.E.2d 1263.) Upon review, we cannot say that the trial court's determination was against the manifest weight of the evidence, or that the alleged conflicts in the evidence rendered the State's case so improbable or unsatisfactory as to raise a reasonable doubt of the defendants' guilt.

Defendant Darnell claims that the evidence is insufficient because the trial court may have considered the inculpatory statement made by his brother, defendant Melvin, that implicated defendant Darnell in the sexual assaults of the children. Defendant Darnell observes that his brother did not testify at trial. According to defendant Darnell, if his brother Melvin's out-of-court "statement was considered against Darnell[,] this would be a gross violation of Darnell's sixth amendment right to confrontation," citing *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

■ However, there is nothing in the record to indicate that the trial court, sitting as finder of fact, considered defendant Melvin's statements in determining the sufficiency of the evidence against defendant Darnell. Moreover, in light of the totality of the evidence properly ad-

missible against defendant Darnell, as set forth above, the record supports the trial court's determination of defendant Darnell's guilt.

Based upon the foregoing, we find the State's evidence sufficient to prove defendants' guilt beyond a reasonable doubt.

## II

The defendants argue that they are entitled to a new trial because they were deprived of the effective assistance of counsel. Defendants assert that their defense counsel was *per se* ineffective, and that he was suffering from a *per se* conflict of interest, because their attorney represented them while in the midst of disciplinary proceedings instituted against him.

The specific facts pertaining to this issue, according to the record as well as public documents of the Illinois Supreme Court, are as follows. On February 19, 1987, the law license of defendants' trial counsel, Edward David Triwush (Triwush), was suspended for a six-month period by order of the Illinois Supreme Court. The suspension resulted from Triwush's failure to file an appellate brief on behalf of a defendant in an unrelated criminal case. See *In re Weinberg* (1988), 119 Ill. 2d 309, 518 N.E.2d 1037.

On March 24, 1987, during this six-month suspension, Triwush filed his appearance on defendants' behalf. On December 17, 1987, after the suspension had expired, the Illinois Supreme Court entered a rule to show cause why Triwush should not be held in contempt of court for having practiced law while his license was suspended. Thereafter, on February 3, 1988, Triwush was held in contempt of court by the Illinois Supreme Court and was ordered *inter alia* to make restitution to clients whom he had represented while his license was suspended.

A few weeks later, on February 25, 1988, the defendants' bench trial began. Triwush appeared on defendants' behalf during trial. Testimony was heard on February 25, 1988, as well as on March 4 and March 17, and closing arguments were given on March 17. Also on March 17, Triwush mailed to the Illinois Supreme Court the request that his name be stricken from the master roll of attorneys, pursuant to Illinois Supreme Court Rule 762 (107 Ill. 2d R. 762 (disbarment on consent)). On March 31, 1988, in accordance with his request under Rule 762, Triwush was disbarred from the practice of law by order of the Illinois Supreme Court.

Triwush failed to appear at post-trial hearings scheduled and continued by the court on April 18, April 20, and April 22, 1988. He did not notify the trial court, or the defendants, that he had been disbarred. The trial court was informed of Triwush's disbarment on May 4, 1988, by an

assistant State's Attorney, and the court appointed an assistant public defender to represent defendants at the post-trial proceeding. The defendants' appointed counsel drafted and filed a motion for a new trial on defendants' behalf, and argued this motion at the trial court's post-trial hearing. Thereafter, once the court denied defendants' post-trial motion, the appointed counsel represented defendants at their sentencing hearing.

Defendants argue that Triwush's representation of them during his disciplinary problems amounted to *per se* ineffective assistance of counsel and caused him to suffer from a *per se* conflict of interest. We disagree.

The sixth amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence." (U.S. Const., amend. VI.) This guarantee applies to all critical stages of the prosecution, including pretrial, trial, and sentencing. (*United States v. Gouveia* (1984), 467 U.S. 180, 81 L. Ed. 2d 146, 104 S. Ct. 2292.) If an accused is deprived of counsel at any of these critical stages, he is entitled to relief without showing that he was prejudiced thereby; the deprivation of counsel is deemed *per se* reversible error. (*United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.) Where counsel has been provided, but the attorney's performance falls below objective standards of reasonable competence, the defendant is entitled to relief if he can prove that the outcome probably would have been different had his attorney provided competent legal representation. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

It has been held that the sixth amendment right to counsel is not satisfied where the defendant was represented by a person who was never licensed to practice law. In these circumstances, the defendant's deprivation of a duly licensed attorney is considered *per se* reversible error. (See *United States v. Novak* (2d Cir. 1990), 903 F.2d 883; *Solina v. United States* (2d Cir. 1983), 709 F.2d 160; *People v. Felder* (1979), 47 N.Y.2d 287, 391 N.E.2d 1274, 418 N.Y.S.2d 295; see also *People v. Cox* (1957), 12 Ill. 2d 265, 146 N.E.2d 19 (defendant's representation by one never licensed to practice law deprived defendant of fundamentally fair trial).) "The principle applied in such cases is that one never admitted to practice law and therefore who never acquired the threshold qualification to represent a client in court cannot be allowed to do so, and no matter how spectacular a performance may ensue, it will not constitute 'effective representation of counsel' for purposes of the Sixth Amendment." *United States v. Mouzin* (9th Cir. 1986), 785 F.2d 682, 697.

However, courts have applied the rule of *Strickland* when the defendant was represented at trial by an attorney who has been disbarred or was practicing under a suspended license. (See *Waterhouse v. Rodriguez* (2d Cir. 1988), 848 F.2d 375 (defense counsel disbarred during trial for conduct unrelated to defendant's trial); *United States v. Mouzin* (9th Cir. 1986), 785 F.2d 682 (same); *Commonwealth v. Thibeault* (1990), 28 Mass. App. 787, 556 N.E.2d 403 (defense attorney's license suspended during trial for conduct unrelated to defendant's case); *State v. Smith* (Minn. App. 1991), 464 N.W.2d 730 (same); see also *United States v. Williams* (7th Cir. 1991), 934 F.2d 847 (defense counsel's license suspended, for neglect of unrelated case, after defendant's trial ended); *People v. Elvart* (1989), 189 Ill. App. 3d 524, 545 N.E.2d 331 (defense attorney's license suspended for nonpayment of State license fees); *Beto v. Barfield* (5th Cir. 1968), 391 F.2d 275 (same); *Reese v. Peters* (7th Cir. 1991), 926 F.2d 668 (same); *People v. Lieberman* (1986), 149 Ill. App. 3d 1052, 501 N.E.2d 797 (attorney's censure by Attorney Registration and Disciplinary Commission did not result in ineffective assistance of counsel); *cf. Commonwealth v. Vance* (1988), 376 Pa. Super. 493, 546 A.2d 632 (no *per se* reversible error where defense counsel disbarred, for false statement in application for admission to bar, after trial ended); but see *People v. Brigham* (1991), 208 Ill. App. 3d 982, 567 N.E.2d 735, *appeal allowed* (1991), 139 Ill. 2d 599 (*per se* reversible error where defense counsel's name stricken from master roll of attorneys, for failure to pay license fee, before defendant's trial began).) Similarly, it has been held that the defense attorney's pending disciplinary proceedings during his representation of the defendant do not automatically dictate the conclusion that defendant is entitled to a new trial for ineffective assistance of counsel; rather, the defendant's claim of ineffective assistance of counsel is to be considered in light of the standard set forth in *Strickland.* See *People v. Long* (1990), 208 Ill. App. 3d 627, 567 N.E.2d 514; *People v. Perry* (1989), 183 Ill. App. 3d 534, 540 N.E.2d 379; *People v. Bernardo* (1988), 171 Ill. App. 3d 652, 525 N.E.2d 857; *People v. Stachelek* (1986), 145 Ill. App. 3d 391, 495 N.E.2d 984; see also *People v. Williams* (1983), 93 Ill. 2d 309, 444 N.E.2d 136 (defendant awarded a new trial under "unique circumstances" that defense counsel faced disbarment proceedings while representing defendant at trial for capital offense); *People v. Rainge* (1983), 112 Ill. App. 3d 396, 445 N.E.2d 535 (same); *cf. People v. Williams* (1985), 138 Ill. App. 3d 1041, 487 N.E.2d 13 (no *per se* ineffective assistance of counsel where defense attorney facing criminal indictment while representing defendant).

It has been noted that "the infliction of discipline upon an attorney previously qualified and in good standing will not and should not trans-

form his services into ineffective assistance." (*Mouzin*, 785 F.2d at 697.) Thus,

> "[n]either suspension nor disbarment invites a per se rule that continued representation in an ongoing trial is constitutionally ineffective. Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client who has chosen him. Continued licensure normally gives a reliable signal to the public that the licensee is what he purports to be—an attorney qualified to advise and represent a client. But it is an undeniable fact of experience that lawyers unhappily incur sanctions ranging from censure to disbarment; that sometimes that discipline flows from revealed incompetence or untrustworthiness or turpitude such as to deserve no client's confidence. All we need hold here is that [whether] a lawyer's services were ineffective [should be considered] on a case [by case], not a per se, basis." *Mouzin*, 785 F.2d at 698.

Similar reasoning has influenced jurisprudence concerning the question of whether a defense attorney facing disciplinary proceedings has suffered from a *per se* conflict of interest that deprived the defendant of the effective assistance of counsel. A *per se* conflict of interest is said to arise when there are "certain facts about a defense attorney's status *** [that] engender, *by themselves*, a disabling conflict." (Emphasis in original.) (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 14, 525 N.E.2d 30.) In such cases, "there is no need to show that the attorney's actual performance was in any way affected by the existence of the conflict. [Citations.]" (*Spreitzer*, 123 Ill. 2d at 15.) Thus, where a *per se* conflict of interest exists, the defendant is not required to show prejudice in order for his conviction to be reversed. (*Spreitzer*, 123 Ill. 2d at 15.) The Illinois Supreme Court in *Spreitzer* stated:

> "The justification for treating these conflicts as *per se* has been that the defense counsel in each case had a tie to a person or entity—either counsel's client, employer, or own previous commitments—which would benefit from an unfavorable verdict for the defendant. The existence of such a tie created, in each instance, several problems. First, the knowledge that a favorable result for the defendant would inevitably conflict with the interest of his client, employer or self might 'subliminally' affect counsel's performance in ways difficult to detect and demonstrate. [Citations.] A second consideration in *per se* conflict of interest cases has been the possibility that the conflict will unnecessarily subject the attorney to 'later charges that his representation was not completely faithful.' [Citations.] In these situations, we have reversed

convictions unless the record reflects that the defendant has been made aware of the conflict and has knowingly waived his right to conflict-free counsel. [Citation.]" 123 Ill. 2d at 16-17.

It has been held that, where the defendant is represented by a person not licensed to practice law, the "imposter attorney" was cloaked with an active conflict of interest necessitating a new trial. (*Solina v. United States* (2d Cir. 1983), 709 F.2d 160, 164.) "The concern [in these circumstances is] that a layman posing as an attorney might fear that vigorous representation could lead to inquiry into his background and discovery of his lack of credentials \*\*\*." (*United States v. Mouzin* (9th Cir. 1986), 785 F.2d 682, 699.) Courts have also found a *per se* conflict of interest where the attorney engaged in acts similar to those for which the defendant was convicted (*United States v. Cancilla* (2d Cir. 1984), 725 F.2d 867; *Government of Virgin Islands v. Zepp* (3d Cir. 1984), 748 F.2d 125; see also *Commonwealth v. McCloy* (1990), 393 Pa. Super. 217, 574 A.2d 86 (no *per se* conflict or ineffective assistance of counsel where attorney under investigation for unrelated criminal charge while representing defendant)), or when the attorney was under investigation or indictment by the same office that was prosecuting the defendant (*United States v. DeFalco* (3d Cir. 1979), 644 F.2d 132 (*en banc*); *United States v. McLain* (11th Cir. 1987), 823 F.2d 1457).

However, courts have held that there is no *per se* conflict of interest when the attorney has been suspended or disbarred for conduct unrelated to defendant's trial. Under these circumstances, "[t]he mere fact that appellant's attorney may have been distracted by his pending suspension does not rise to the level of a [*per se*] conflict of interest." *State v. Smith* (Minn. App. 1991), 464 N.W.2d 730, 733; see also *United States v. Mouzin* (9th Cir. 1986), 785 F.2d 682; *Commonwealth v. Thibeault* (1990), 28 Mass. App. 787, 556 N.E.2d 403.

■ Based upon this precedent, we conclude that the facts in the instant cause are not sufficient to conclude either that Triwush rendered *per se* ineffective assistance of counsel, or that he was suffering from a *per se* conflict of interest that deprived defendants of the effective assistance of counsel.

Because Triwush had been duly licensed to practice law in this State, the instant cause is distinguishable from those cases where *per se* ineffective assistance was found because the defendant had been represented by someone never properly licensed to practice law. (See *Novak*, 903 F.2d 883; *Solina*, 709 F.2d 160; *Felder*, 47 N.Y.2d 287, 391 N.E.2d 1274, 418 N.Y.S.2d 295.) For this same reason, the facts of the instant cause also do not present a *per se* conflict caused by the defendant's representation by an "imposter attorney." (See *Solina*, 709 F.2d 160.)

As a result, we decline to hold that the facts herein show that defendants' attorney was *per se* ineffective, or that counsel suffered from a *per se* conflict of interest.

Defendants also argue that they were prejudiced by their attorney's lack of effective representation of them at trial. In this regard, defendants contend that their trial counsel should not have questioned the children's mother, Ms. H., whether she "ever ha[d] a problem with either of the [defendants] with regard to a sexual assault on your kids before 1986." Ms. H. responded that she had. Defendants claim that this questioning permitted the State to "bring out the details" of the pre-1986 assault during redirect examination of Ms. H.

■ We consider this argument under the guidelines stated in *Strickland*. (See *Waterhouse*, 848 F.2d 375; *Mouzin*, 785 F.2d 682; *Thibeault*, 28 Mass. App. 787, 556 N.E.2d 403; *Smith*, 464 N.W.2d 730; see also *Williams*, 934 F.2d 847.) According to this standard, a defendant must show that (1) his trial counsel's performance was so deficient that it fell below objective standards of reasonable professional competence and (2) this deficient performance so prejudiced defendant that he was denied a fair trial. (*Strickland*, 466 U.S. at 688-94, 80 L. Ed. 2d at 693-98, 104 S. Ct. at 2064-68; see also *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) In determining prejudice, the court must inquire "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt [concerning] guilt." *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; see also *People v. Kokoraleis* (1989), 132 Ill. 2d 235, 547 N.E.2d 202.

We cannot conclude that the defense attorney's cross-examination of Ms. H. regarding defendants' other assaults upon the children so prejudiced the defendants that they should be accorded a new trial. We do not believe that the exclusion of this evidence would have created a reasonable doubt of the defendants' guilt. The remaining evidence against the defendants was substantial and amply supported the trial court's findings of defendants' guilt. Defendant Melvin admitted that he had sexually assaulted both children in the summer of 1986, and the children testified at trial that they had been sexually assaulted by him during this period of time. In addition, L.H. testified that she and her brother had been sexually assaulted by defendant Darnell. Physical examinations of the children in September 1986 revealed that they had been recently subjected to sexual assaults, and that these assaults had been ongoing for an indefinite period of time.

■ Defendants also assert that they were prejudiced by their attorney's absence during post-trial and sentencing proceedings. The record reflects that defendants were appointed an assistant public defender to

represent them during these proceedings. We find nothing in the record to establish that the trial court's rulings during post-trial and sentencing proceedings would have been altered by the continued representation of their trial counsel.

On this record, we cannot conclude that defendants' counsel rendered ineffective assistance pursuant to *Strickland*. We are also unable to say that defendants' attorney suffered from disabling, subtle pressures that created a conflict of interest which substantially and adversely affected counsel's representation of defendants. (See *Mouzin*, 785 F.2d 682; *Smith*, 464 N.W.2d 730; *Thibeault*, 28 Mass. App. 787, 536 N.E.2d 403.) In light of these considerations, we find defendants' arguments insufficient ground to grant them a new trial.

### III

Defendants also claim that certain counts of their convictions should be vacated, and the State concedes error on this issue. As a result, counts VI, VII, VIII, X, XI, XII, and XIII of defendants' convictions are reversed. Defendants' convictions for the remaining counts (counts I, II, III, IV, V, and IX), as well as the sentences imposed therefor, remain undisturbed.

Pursuant to the State's request and in accord with *People v. Nicholls* (1978), 71 Ill. 2d 166, and *People v. Agnew* (1985), 105 Ill. 2d 275, we hereby assess defendants $75 as costs for this appeal and incorporate it as part of our judgment.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part, and reversed in part.

Affirmed in part; reversed in part.

JOHNSON and LINN, JJ., concur.