SECOND DIVISION 

March 29, 2002

No. 1-99-1863

THE PEOPLE OF THE STATE OF ILLINOIS, 

Plaintiff-Appellant,

v.

ALPHONSO SANCHEZ, 

Defendant-Appellee.

)))))))))

Appeal from the

Circuit Court of

Cook County

No. 96 CR 14738

Honorable

Stuart Palmer,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Defendant appeals the denial of his posttrial motion for a new trial.  He argues that the trial court ignored an oral motion made by defendant claiming ineffective assistance of trial counsel.  No issues are raised attacking the guilty verdict.  We remand with directions to consider the motion.  The court is also directed to consider a record from the Attorney Registration and Disciplinary Commission (ARDC) documenting disciplinary action taken against defendant's trial attorney for conduct, some of which was contemporaneous with the attorney's representation of defendant.  

Defendant was charged in June 1996 with first degree murder, attempted first degree murder and alternative counts of aggravated discharge of a firearm.  Defendant appeared in court on June 25, 1996, and entered a not-guilty plea.  Defendant was represented by the public defender on that date.  A March 10, 1997, trial date was set.  

Defendant appeared in court on March 10 with a privately retained attorney.  The trial was continued to April 21, 1997.  The record shows the case was next called on June 2, 1997.  On that date, the State told the court that defendant's private attorney had been suspended from practice by the ARDC.  The court struck defendant's attorney's earlier filed appearance and appointed the public defender.  The court noted for the record that the ARDC had suspended defendant's attorney from practice and recommended that the attorney be disbarred.  The case was continued to June 24, 1997.  

The public defender appeared for defendant on August 5, 1997, and asked that defendant's fitness to stand trial be determined.  The court ordered that defendant be examined and continued the case to September 15, 1997.  

The next entry in the record shows that the case was called for trial on July 28, 1998.  The public defender appeared for defendant.  Defendant waived his right to a trial by jury.  The State then made an opening statement.  Before the public defender's opening statement, the court noted that the charges against defendant subjected him to consecutive sentences.  The court asked defendant if he understood the scope of the potential penalties he faced and further questioned whether defendant still intended to waive his right to a jury.  Defendant said that he wanted a jury after a brief exchange with the court.  The court then struck the jury waiver and the case was set for trial on August 24, 1998.  

On August 24, a private attorney appeared for defendant.  The attorney asked for a 60-day continuance to prepare for trial.  The State agreed to the continuance so long as the case would be tried within 60 days.  The court said it was reluctant to grant the continuance because of the age of the case and noted that defendant had been in custody since 1996:

"[The public defender] is ready and ready in a timely manner. So while I am hesitant to continue this case, [defendant] has had to go through the experience of having a lawyer that was disbarred, and his case was delayed for that reason.

I want him to be tried [with] an attorney of his choice.  I will allow [the attorney] to file his appearance with the understanding I expect this case to go to trial in about 60 days.  So the public defender is given leave to withdraw."

The case was then continued to September 14, 1998.  The court continued the case to September 16 when defendant's attorney was not able to appear on September 14.  Defendant's attorney appeared on September 16 and asked for a two-week status date.  The case was then continued by agreement to October 2, 1998.

The record shows that defendant's attorney failed to appear on October 2, 1998.  The court noted for the record that there had been some discussion that defendant's attorney was ill and was being hospitalized.  The case was continued for one week to October 9, to "track [defendant's attorney] down."  

Defendant's attorney next appeared on October 30.  The case was set for trial for December 15 and 16.   The case was again continued to February 1, 1999, due to a conflict in the trial court's schedule.  

On February 1, 1999, the court learned that defendant's attorney had been arrested the day before on a charge of possession of controlled substances.  The court noted that defendant's attorney also had a contempt matter pending before another judge.  Defendant's attorney explained that, because of his arrest, he was not prepared to proceed to trial on defendant's case:

"Had I not been picked up yesterday, I had intended on answering ready.  I got picked up yesterday afternoon.  Under the circumstances, this is preventing me from being ready today."  

Defendant's attorney then admitted that he was in the court building to appear on his criminal charge and that he could not advise the court when he would be able to proceed on defendant's case until after his bond hearing.  The court then addressed defendant:

"THE COURT: [Defendant], do you understand I want to make sure you understand what I have been talking about to [your attorney].  Apparently [your attorney] was arrested and charged with a criminal offense last night.  He informed me just now it's a possession of controlled substance matter.  Do you understand that?

***

DEFENDANT: Yes.

THE COURT: All right.  He is not in a position to try your case today because of the fact that I assume he stayed in the jail last night and doesn't have his files with him and has some other court appearances he has to make with regard to himself.  Do you have any thoughts about that?

DEFENDANT: I have a couple of thoughts, you know.  First you know, when I had my first lawyer that same thing happened with my first lawyer *** I lost that lawyer.

***

You know, my family, you know, man, we ain't got money like that to be paying for lawyers, you know.  I am trying to work on getting my money back from [my first lawyer], which I have not gotten.

THE COURT: Well, [your attorney] still represents you unless you don't want him to. [Your attorney] has indicated to me that he intends to have a conversation with you either today or tomorrow when he has the opportunity to get released from custody.  You were just informed of this so I don't expect you to make a snap decision.  What I am going to do is I am going to have to have a further conservation with you, [defendant], to determine if you still want [your attorney] to represent you.

***

Understanding not just the fact that he was arrested because he certainly has not been convicted of anything with regard to that, but the fact that he is under a charge here in Cook County, if that case remains pending, he is in a situation where he is in a position where he has to defend himself with regard to criminal charges and that may take away from his ability to give adequate attention to your case.  It also may raise some conflictual issues in terms of his relationship with the [S]tate's [A]ttorney's office, in that he [is] being prosecuted by the office in which he is trying the case against.  So do you understand what I am saying?

DEFENDANT: Yes."

Defendant was also reminded that an attorney could be appointed for him should he decide he no longer wanted to be represented by his attorney and could not afford another one.  The case was then continued to February 3 to allow defendant to speak with his attorney.  

Defendant appeared on February 3 and said that he wished to continue with his attorney.  Defendant said that he had spoken with his attorney and thought about the implications and had decided he did not want to change attorneys.  Defendant said he understood that his attorney had been charged with a crime and was being prosecuted by the same office prosecuting him.  He denied that his attorney's situation created a conflict:

"DEFENDANT: I don't think there is going to be no conflict.  That's his case. That had nothing to do with my case.

THE COURT: You don't think that distracts [from] his ability to represent you?

DEFENDANT: No. I'm innocent.  He can't go against me.  He can't say nothing against me.

THE COURT: You are confident he will be able to give his loyalty to you and his full attention to you?

DEFENDANT: Yes.

THE COURT: You want to stay with him?

DEFENDANT: Yes.

THE COURT: Even though he is being prosecuted by the State's Attorney's Office?

DEFENDANT: Yes.  I don't think there should be no reason for it."

Defendant's attorney then denied that the criminal charge pending against him created a conflict.  He assured the court that he would be able to aggressively represent defendant and did not believe that the criminal charge would hamper him.  The court then continued the case to February 5, to review relevant case law.

On February 5, 1999, defendant's attorney filed a document titled "Defendant-Attorney Acknowledgment of Defense Counsel's Pending Criminal Matter and Potential Legal Ramifications of Said Matter to the Defendant."  This document revealed that the attorney had been arrested for possession of a controlled substance on January 31, 1999, and that the case was set for preliminary hearing on March 25, 1999.  The document said that the attorney had voluntarily disclosed and discussed the following:

"A) There now exist [
sic
] a potential conflict of interest by virtue of the fact that I am being prosecuted by the same State's Attorney's Office which is prosecuting the defendant's case.  I have explained that it could be argued that I would or could compromise the defendant's case in order to seek a benefit from the State's Attorney's Office on my case.  

B) It could also be argued that my own pending criminal charge will consume my time and energies to the detriment of the defendant's case.

C) Finally, depending upon the outcome of my pending criminal charge I could if found guilty have my license to practice law suspended or revoked."

The document then revealed that the attorney had assured defendant that he was not guilty of the crime charged and that the attorney would not be distracted from his representation of defendant.  Defendant signed the document and executed the option showing that he intended to keep his attorney and waive the conflict.  The court then questioned defendant at length:

"THE COURT: And when you signed this document under option one as listed in this document, do you understand that what you're saying is you want [your attorney] to continue to represent you?

DEFENDANT: Yes, sir.

THE COURT: Is that what you want?

DEFENDANT: Yes, sir.

THE COURT: And you are also acknowledging that you understand everything that is in this document?

DEFENDANT: Yes, sir.

THE COURT: And that you understand all the potential conflict of interest matters that are raised with regard to [your attorney's] pending criminal charge, do you understand that?

DEFENDANT: Yes.

THE COURT: He explained it to you?

DEFENDANT: Yes.

***

THE COURT: Okay, Well, do you understand, sir, that what could be claimed is there is a couple of things, okay.  As a result of [your attorney's] recent arrest, what could be claimed is that [your attorney] is in a conflict situation because he's currently being prosecuted by the same agency that is prosecuting you.  And it could be argued that [your attorney] would have a tendency to compromise your case or do something that would be to your detriment in order to seek a benefit from the State's Attorney's Office for his own case.

Do you understand that that is something that could be argued and you could argue that?  Do you understand what I said?

DEFENDANT: Yes.

THE COURT: Okay.  And do you see that as a problem, sir?  I want to make you understand what I just said because you're kind of squinting at me.

DEFENDANT: Because what I read is he's saying this.  He's not going to –you know, go against me on this case.  He's going to represent me.  Like I said, he's going to represent me.

THE COURT: Let me put it in simpler terms, okay?

***

One of the potential conflicts is simply that the fact that [your attorney] is currently charged with a crime, in his efforts to defend himself, would consume his energies and direct his attention away from you in your case towards his own case, he wouldn't be able to think about your case enough, even enough time to devote to your case.  That is one of the potential conflicts.  And he's indicating that he doesn't believe that to be the case.

The other potential conflict is that the fact that he's being prosecuted by the same people that are prosecuting you.  So for example, I'm just going to put it in the most basic terms.  The potential conflict would be that somewhere down the line you could say or that you might feel that [your attorney] could go to the State's Attorney's Office and say, you know, what I'm going to ***.

Well, I'm not going to do such a good job for [defendant].  So you take it easy on me, do you understand. *** [H]e might not represent you too aggressively or he might not do such a good job for you and [hope] in return for the State's Attorney's Office, the State's Attorney Office would take it easy on him in his case.  Do you understand that?

DEFENDANT: Yes."

The record shows that the court continued questioning defendant.  Defendant repeatedly said that he wanted to continue with his attorney and that he understood what the potential conflict was and that he did not believe there was a problem:

"THE COURT: Okay, so you're telling me you want him to keep representing you even though he has these pending charges and even though there [is] this potential for conflict that I told you about, right?

DEFENDANT: Right, because I feel, you know, that this case he'll handle and do my case.

THE COURT: And you feel *** that he's going to devote his full energies to you and you feel he won't do anything to your detriment, is that what you're telling me?

DEFENDANT: Yes."

The court accepted defendant's signed waiver and set the case for trial.  

The case was tried on March 12, 1999.  Defendant submitted a second written jury waiver.  The court accepted the waiver.  The State then made an opening statement.  Defendant waived opening.  The State presented its case against defendant.  Defendant cross-examined the State's witnesses and presented two defense witnesses.  The court found defendant guilty of all charges on March 15, 1999.  The case was set for sentencing on April 20.  

Defendant appeared on April 20 with a new attorney who filed a motion for new trial on defendant's behalf.  The court denied the motion.  The court then heard arguments relating to sentencing.  Before imposing sentence, the court asked defendant if there was anything he wanted to say.  Defendant said that his attorney failed to investigate his case.  Defendant said he was framed and that he could have proved that if his attorney had investigated his case.  The court made no response to defendant's remarks.  The court then sentenced defendant to consecutive sentences of 50 years for first degree murder and 25 years for attempted first degree murder.  The appellate defender was appointed to file defendant's appeal.     

Defendant first argues on appeal that the trial court erred in failing to consider defendant's 
pro se
 oral posttrial remarks alleging ineffective assistance.  Appellate counsel characterizes defendant's posttrial remarks as a "motion."  We adopt that characterization.  We believe under the unique circumstances of this case a preliminary inquiry was called for when defendant expressed dissatisfaction with his trial attorney.  
People v. Robinson
, 157 Ill. 2d 68, 86, 623 N.E.2d 352 (1993).

 Defendant contends that the written posttrial motion presented by his new attorney at the sentencing hearing was prepared by his trial attorney.  The motion did not make ineffective assistance allegations.  Defendant told the trial court that his trial attorney did not investigate his case, did not confer with defendant and failed to interview witnesses.  The record shows no acknowledgment of defendant's statements by the trial judge, who then proceeded to sentence defendant.

A trial court must examine the factual matters underlying a defendant's 
pro se
 claim of ineffective assistance of trial counsel.  
Robinson
, 157 Ill. 2d at 86.  If an examination reveals the claim lacks merit, it may then be denied.  If the allegations suggest possible neglect of the case, new counsel should be appointed.  
Robinson
, 157 Ill. 2d at 86.  See also 
People v. Nitz
, 143 Ill. 2d 82, 572 N.E.2d 895 (1991).  The trial court should afford a defendant the opportunity to specify and support his complaints and not "precipitously and prematurely" deny the motion.  
Robinson
, 157 Ill. 2d at 86.  
Cf
. 
People v. Munson
, 171 Ill. 2d 158, 662 N.E.2d 1265 (1996) (ineffective assistance claim properly denied where the record showed the trial court made every effort to examine the nature and substance of the defendant's claims but the defendant failed to provide facts to support his claim).  Defendant here was not allowed an opportunity to address his claim of ineffective assistance.  His motion was not considered, which, we conclude, was contrary to the requirements set out in 
Robinson
.  An inquiry was warranted here, where the trial court knew that defendant's attorney faced prosecution from the same office that was prosecuting defendant.  We remand this matter to the trial court for a hearing on defendant's ineffective assistance claim.  

We now consider a motion taken with the case.  After this appeal was filed, defendant filed a motion to supplement the appellate court record with the record of an ARDC proceeding conducted after defendant's trial.  The State objected, arguing that counsel's alleged ineffectiveness and defendant's waiver of conflict-free counsel must be decided only on the record in this case.  The State maintains that the ARDC record reveals facts disclosed after defendant's criminal trial and should be raised in a postconviction petition.  Matters that were not and could not have been raised at trial are generally reserved for postconviction petitions.  725 ILCS 5/122-1 (West 2000).  

We note and understand the State's objection to consideration of the ARDC record.  The record of counsel's performance at the trial is ordinarily the only relevant consideration to determine whether his client received effective assistance.  
People v. Williams
, 93 Ill. 2d 309, 325, 444 N.E.2d 136 (1982).  But we believe that the unique circumstances present in this case require trial court review of the ARDC file for two reasons.  First, we have already concluded that the trial court should have considered defendant's oral posttrial claim of ineffective assistance.  
Robinson
, 157 Ill. 2d at 86.  Secondly, the ARDC record reveals a heretofore undisclosed level of addiction and illness dating back to defendant's trial that could have compromised the attorney's professional abilities.  There is no evidence in the record that either defendant or the trial court was aware of this information.  Nor can we predict what impact this information might have had on defendant's decision to retain his attorney or the decision of the trial court to allow defendant to do so in spite of an obvious conflict.   

A similar consideration of records extraneous to the trial at issue was conducted in 
People v. Allen
, 220 Ill. App. 3d 772, 580 N.E.2d 1291 (1991), where we considered two defendants' ineffective assistance claims based on the defendants' contention that they had been represented at trial by a disbarred attorney.  
Allen
, 220 Ill. App. 3d at 780.  In the course of addressing the issue on the merits, we reviewed the record "as well as public documents of the Illinois Supreme Court."  
Allen
, 220 Ill. App. 3d at 780.

Consideration of the ARDC record, a public document, is warranted here.  A defendant may not be entitled to perfect representation, but he is entitled to competent representation.  
People v. West
, 187 Ill. 2d 418, 432, 719 N.E.2d 664 (1999).  We believe that to fairly evaluate the effectiveness of defendant's trial counsel, review of the ARDC record is warranted.  Defendant's motion to include the ARDC materials in the record is granted and the trial court is directed to consider these materials on remand, insofar as they relate to the time period of defendant's trial.  

Last, we consider whether double jeopardy applies should the trial court decide that a new trial is warranted.  Double jeopardy does not preclude retrial of a defendant whose conviction is supported by sufficient evidence but set aside because of errors in process.  
People v. Olivera
, 164 Ill. 2d 382, 393, 647 N.E.2d 926 (1995).  We note that defendant waived review of the sufficiency of the evidence against him by failing to argue the issue in his brief.  
Meyers v. Kissner
, 149 Ill. 2d 1, 8, 594 N.E.2d 336 (1992) (issues not argued are deemed waived).  Waiver aside, we conclude that the evidence here is sufficient to support a conviction for first degree murder and attempted murder.

Evidence is sufficient when a rational trier of fact could find that the essential elements of the offense were proven beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985).  A person commits murder if, while committing the acts that cause death: (1) he intends to cause death or great bodily harm, or knows that his acts will cause death; (2) he knows that his acts create a strong possibility of death or great bodily harm; or (3) he is attempting or committing a forcible felony other than second degree murder.  720 ILCS 5/9-1(a) (West 2000).  Attemped murder requires the State to prove that a defendant made a substantial step toward the commission of murder while possessing the intent to kill the victim.  
People v. Green
, 322 Ill. App. 3d 747, 754, 751 N.E.2d 10 (2001).    

Jose Velez testified that he saw defendant push the murder victim to the ground and shoot him twice.  Velez identified defendant as the shooter at trial.  Defendant's girlfriend testified that defendant admitted to her that he shot the victim.  Concepcion Velez, the attempted murder victim, testified at trial that defendant shot her.  The gunshot passed through her left palm, past her heart and lung.  This evidence is sufficient for a trier of fact to find the elements of murder and attempted murder beyond a reasonable doubt.  There is no impediment to a new trial, should the trial court determine on remand that defendant's allegations of ineffective assistance of counsel have merit.  Our conclusion regarding the sufficiency of the evidence is not a finding of defendant's guilt that would be binding on retrial.  
People v. McDonald
, 125 Ill. 2d 182, 202, 530 N.E.2d 1351, 1360 (1988).       

We note that defendant's consecutive sentences of 50 years for murder and 25 years for attempted murder were not challenged under the Supreme Court's recent pronouncement in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  The constitutionality of consecutive sentences in light of 
Apprendi
 was addressed by our supreme court in
 
People v. Wagener
, 196 Ill. 2d 269, 752 N.E.2d 430 (2001).

The 
Wagener
 court noted that 
Apprendi
 "explicitly disclaimed any holding regarding consecutive sentencing" and the conclusion that consecutive sentencing triggers 
Apprendi
 extends the case beyond its facts.  
Wagener
, 196 Ill. 2d at 284. 
  
The court then reasoned that, because 
Apprendi
 addresses only sentences for individual crimes and 
consecutive sentences do not become a single sentence, 
Apprendi
 is not implicated.  
Wagener
, 196 Ill. 2d
 at 286-87.

Defendant here was sentenced to 50 years for murder and 25 years for attempted murder.   Each of these sentences was within the statutory range prescribed by statute.  See 730 ILCS 5/5-5-3 (West 1998).  
Apprendi
 is not implicated and need not be considered on remand.

Cause remanded with directions; motion granted.

GORDON and McBRIDE, JJ., concur.