The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

Ricky **DILLON,** Defendant-Appellant.

No. 85CA0674.

Colorado Court of Appeals, Div. II.

Jan. 29, 1987.

Rehearing Denied March 5, 1987.

Certiorari Denied (People) July 13, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David R. Little, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado Springs, for defendant-appellant.

SMITH, Judge.

Defendant, Ricky Dillon, appeals the order of the trial court denying his motion for post-conviction relief under Crim.P. 35(c), in which he sought to set aside his convictions for felony murder, aggravated robbery, second degree burglary, conspiracy to commit second degree burglary, and conspiracy to commit robbery. He contends that he was not afforded the effective assistance of counsel required under the United States and Colorado Constitutions. We agree and, accordingly, reverse and remand with directions that a new trial be granted.

On August 14, 1977, Carl Taylor was bludgeoned to death as he slept in the back of a moving van parked outside an apartment complex in Colorado Springs. Testimony at trial established that a group of soldiers who lived in or close to the apartment complex had broken into the van for the purpose of taking anything of value. The victim, who was an employee of the van owner, was discovered inside and beaten to death with a car jack.

The police investigation almost immediately focused on a group of five men that did not include defendant. This group met on several occasions to decide how to cover up their involvement in the murder and to monitor the police investigation. Three of these suspects were involved in threatening a key witness and his family to the extent that the witness had to be given police protection and moved out of state. Members of the group made many inconsistent statements to authorities and friends and admitted at trial that they had lied extensively to police.

During the police investigation, each of the suspects was interviewed numerous times but in none of these interviews was defendant mentioned as being a participant in either the murder or the theft from the van. He was not implicated until several

months later, just before the grand jury proceedings were to begin. At that time, a close friend of the suspects, who had allegedly been involved in the cover-up attempts, changed his story and told police that defendant had killed Carl Taylor, and within days all of the suspects gave police the same account. An indictment was returned by the grand jury charging defendant with first degree murder, and the district attorney's office sought the death penalty. Indictments were also returned against three of the other participants who were subsequently offered plea bargains so that they would testify against defendant.

An attorney was appointed to represent defendant in February 1978, and a second attorney was appointed to assist him approximately two weeks before trial. Defendant has, from the beginning, maintained that he was not involved nor was he present when the group broke into the van and Carl Taylor was murdered. No physical evidence was presented linking defendant to the crime. Indeed, the only evidence of his involvement presented at trial was the testimony of those who admitted they had participated and that of certain of their family members. The defense did not present any evidence.

The jury found defendant guilty of first degree murder and the trial court sentenced him to death. Defendant appealed the conviction on other grounds, and the judgment was affirmed by this court in *People v. Dillon*, 633 P.2d 504 (Colo.App. 1981). The death sentence was subsequently reduced to life imprisonment when the Colorado Supreme Court ruled that the death penalty statute was unconstitutional.

On August 16, 1982, defendant filed a Crim. P. 35(c) motion to set aside his convictions on the ground that he was inadequately represented by counsel. On May 1, 1985, after an evidentiary hearing, the trial court entered an order in which it found, based upon the testimony of an expert witness, that the following deficiencies in the representation afforded defendant had been established:

"A. Lack of or insufficiency of investigation;

B. Insufficient efforts to obtain the presence of a witness;

C. Insufficient trial presence;

D. 'Changing horses' in closing argument."

However, the trial court concluded that even if these deficiencies in investigation and case presentation were below the standard required, they did not affect the outcome of the trial since the evidence presented was more than sufficient to support the jury's finding of guilt. Based upon these findings and this conclusion, the trial court denied defendant's motion.

■ The right to counsel guaranteed by the Sixth Amendment and Colo. Const. art. II, § 16, entitles the defendant in a criminal proceeding to the reasonably effective assistance of an attorney acting as his diligent and conscientious advocate. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Norman*, 703 P.2d 1261 (Colo.1985). This entitlement requires that the quality of representation received must fall within the range of reasonably competent assistance demanded of attorneys practicing criminal law. *Stroup v. People*, 656 P.2d 680 (Colo. 1982); *People v. Dillard*, 680 P.2d 243 (Colo.App.1984). The standard of reasonableness is an objective one measured by prevailing professional norms. *Strickland v. Washington, supra.*

■ The benchmark for judging a claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington, supra.* If defendant makes such a claim in a Crim. P. 35 proceeding, the burden rests on him to show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington, supra. See also People v. Norman, supra; People v. Dillard, supra.* To show such prejudice, defendant must demonstrate that, when the totality of circumstances is considered, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland v. Washington, supra.*

■ The record in this case, which includes a transcript of the grand jury proceedings, the trial, and the Crim. P. 35(c) hearing, abundantly supports the finding of the trial court that defendant's representation in his defense of the charges against him was deficient.

Dillon's defense at trial was that he was not involved nor even present when the group broke into the van and the murder of Carl Taylor took place. The only significant evidence against him came from the co-defendants in the case and, therefore, impeachment of the testimony of those witnesses was vital. One of the co-defendants had allegedly been troubled about his participation in this crime and had discussed it the day after it occurred with a good friend, Martee Brown. At the time, he told Brown the names of those who had been involved, what had happened, and who had killed Carl Taylor. Ricky Dillon's name was not mentioned. Brown later related this conversation to police and was the witness who had to be given police protection and moved out of state because of threats made against him and his family by those who were seeking to cover-up their involvement in the murder. However, this important impeachment witness was neither present at trial, nor was he subpoenaed. Defense counsel did not even attempt to keep track of his whereabouts.

Further, defense counsel's attempted impeachment of the witnesses and co-defendants who did appear at trial did not adequately bring before the jury, in detail, the contents of the prior inconsistent statements made by these witnesses. No serious attempt was made by defense counsel to stress the importance of the substantial change in the witness' accounts as to who was involved, or how the changes in their positions had transpired over time and after the witnesses/participants had met several times to discuss what they would tell the police.

Defendant was also entitled to a pretrial investigation of sufficient thoroughness to develop potential defenses, to reveal weaknesses in the prosecution's case, and to uncover all facts relevant to the issues of guilt and/or penalty. *People v. Norman, supra; People v. White,* 182 Colo. 417, 514 P.2d 69 (1973). In this regard, the evidence presented at the Crim. P. 35(c) hearing discloses that the defense team did not interview several witnesses who were in possession of relevant facts, and that potentially valuable leads were never explored.

Finally, during closing argument, defense counsel abandoned the theory of defense upon which the case had been tried and told the jury:

> "What we think happened, if you want to believe the witnesses, is that Ricky Dillon hit the guy over the head once with the jack, discovered everybody was splitting except Butch and Sonny.... The man is knocked out briefly.... Sonny Evans then realizes that the man is going to wake up.... At that point in time, Sonny Evans decided to finish off this individual. He took that jack. He got up in the van, and he hit Mr. Taylor over the head right here. He hit him in the body. He hit him again."

This statement by defense counsel essentially admits conduct on the part of defendant which constitutes first degree felony murder. Defense counsel declared that defendant not only was present while the burglary was taking place but also that in the course of that burglary he hit the victim who later died from his injuries. Also, there was no evidence presented at trial to support counsel's assertion that Sonny Evans had hit the victim; thus, the statement could have easily led the jury to conclude that it was defendant's blow that caused the death.

In spite of these deficiencies in representation, the trial court concluded that, in light of the evidence of guilt presented at trial, it did not appear that the result would have been different. We disagree. The deficiencies here were pervasive and went to the very heart of the defense theory.

The resultant prejudice is manifestly apparent.

While mere disagreement as to trial strategy will not support a claim of ineffective assistance of counsel, the deficiencies here cannot be discounted as being only strategic choices. *Cf. People v. Bossert*, 722 P.2d 998 (Colo.1986). A review of the record and the attendant circumstances underlying the entire course of these proceedings establishes that the defense attorneys' performance was below the level of reasonably competent assistance to which an accused is constitutionally entitled and that there is a reasonable probability that, but for those deficiencies, the result of the trial would have been different.

We hold, therefore, that defendant did not receive the assistance of counsel necessary to ensure that his trial was a fundamentally fair one wherein the adversarial process functioned to produce a just and reliable result.

Accordingly, the order denying post-conviction relief is reversed, and the cause is remanded with directions to grant defendant a new trial.

STERNBERG and METZGER, JJ., concur.