**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Robert B. DAVIS, Defendant–Appellant.**

**No. 85CA0988.**

Colorado Court of Appeals, Div. I.

Jan. 28, 1988.

Rehearing Denied March 10, 1988.

Certiorari Denied Aug. 8, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David R. Little, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Saskia A. Jordan, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Robert Davis, appeals the order of the trial court denying his Crim.P. 35(c) motion. We affirm.

In 1976, defendant, a New York City policeman, was convicted of conspiracy to commit first degree murder in connection with the shooting of a Denver couple in which the husband was killed and the wife was seriously injured. The trial court granted defendant's motion to sever his trial from that of his co-defendant, Michael Borrelli, and defendant's trial preceded Borrelli's.

Because the evidence against both co-defendants apparently arose from the same incident, defendant's attorney and Borrelli's counsel agreed to divide the pretrial investigation between themselves, and to share the results of their individual investigations. Counsel entered into this agreement even though the trials had been severed and the defenses were antagonistic. Under this arrangement, Borrelli's counsel was to have sole control of the investigation of the prosecution's chief witness, Terry D'Prero.

Upon that investigation, Borrelli's counsel discovered that D'Prero had entered a not guilty by reason of insanity plea in a criminal action in 1972. Several medical professionals had examined him there; all described various misrepresentations he made to them concerning his childhood, college and athletic careers, and military service record. One concluded that D'Prero had a psychotic organic brain disorder; the others felt that he was not suffering from any mental disorders, although one opined that D'Prero exhibited an antisocial personality and manifested traits associated with pathological liars. However, neither this information nor any hint of its existence was shared with the defendant or his attorney, and defendant proceeded to trial without knowledge of these particular aspects of D'Prero's background.

At defendant's trial, much of D'Prero's testimony focused on the events prior to and during the shooting incident. According to that testimony, defendant arrived in Denver by plane for the purpose of killing the male victim. After meeting at the airport, D'Prero and defendant purportedly spent the evening stalking the intended victim. D'Prero testified that the next day, they entered the victim's home, where defendant allegedly shot the couple, killing the husband and wounding the wife.

Viewed in the light most favorable to the People's case, D'Prero's testimony about defendant's participation was corroborated in several respects. D'Prero testified that, on the night before the murder, he and defendant saw the victim's car at one of the victim's businesses, punctured one of its tires, and followed the victim undetected to a garage where the tire was repaired. Two witnesses testified that the victim dis-

covered his car had a flat tire and drove it to a service station for repair that night. D'Prero also testified that, later that night, he and defendant spent an hour drinking at a local lounge with two women. Both women positively testified that defendant was present during this session.

Moreover, on the morning of the murder, one of the victim's neighbors noticed a black man fitting defendant's general description outside the victim's home shortly before the murder. Two persons testified that, later that morning, two men generally fitting the description of defendant and D'Prero hurriedly left the victim's apartment and drove away in a Buick (the same make of car D'Prero testified he used). Finally, the evidence showed that another New York City police officer signed in and out for defendant at his New York City station house the day of the murder.

Based on all the evidence, the jury convicted defendant of conspiracy to commit first degree murder, but acquitted him of first degree murder and first degree assault.

After defendant's conviction, Borrelli proceeded to trial. There, Borrelli attempted to introduce testimony from a psychiatrist who had examined D'Prero approximately three years prior to the shooting. In that doctor's opinion, D'Prero suffered from a disorder called permanent organic brain syndrome, which could have affected his intellectual functioning and memory. This evidence was excluded by the trial court, and Borrelli was subsequently convicted of first degree murder, conspiracy to commit first degree murder, and first degree assault.

When defendant's trial attorney learned of the information concerning D'Prero's psychiatric history, he filed a motion for new trial based on newly discovered evidence. This motion was denied, and defendant's direct appeal ensued. On appeal, defense counsel elected not to pursue the denial of his new trial motion believing the issue to be non-meritorious under existing law. Several other issues were raised on appeal, but the conviction was affirmed by this court in *People v. Davis*, (Colo.App. 76CA822, Jan. 25, 1979) (not selected for official publication).

Subsequently, Borrelli appealed from his judgment of conviction. This court reversed his conviction and remanded for a new trial because of juror misconduct. *See People v. Borrelli*, 624 P.2d 900 (Colo.App. 1980). In addressing other issues which could possibly occur on retrial, this court determined that it was error to have excluded the testimony of the psychiatrist. *See People v. Borrelli, supra.*

Both parties concede that, on remand, the psychiatrist was permitted to testify, as were all the other medical professionals who had examined D'Prero, and that Borrelli was ultimately acquitted of all charges.

Thereafter, defendant filed this Crim.P. 35(c) motion which was denied by the trial court. This appeal followed.

### I.

Defendant first contends that he was denied effective assistance of counsel at trial because his attorney failed to discover independently that D'Prero had suffered a psychiatric illness some three years prior to the shooting. We agree the representation was deficient but conclude it did not render the trial result unreliable.

A claim of ineffective assistance of counsel must be reviewed in light of all attendant circumstances underlying the entire course of the proceedings. *People v. Velasquez*, 641 P.2d 943 (Colo.1982), *cert. denied*, 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982). The benchmark of such a claim is whether counsel's performance was such that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In order to establish that assistance of counsel did not meet constitutional requirements, defendant must show both that counsel's performance was below the level of reasonably competent assistance, *see People v. Norman*, 703 P.2d 1261 (Colo. 1985), and that counsel's deficient performance resulted in depriving defendant of a

fair trial, the result of which is reliable. *See People v. Tackett,* 742 P.2d 957 (Colo. App.1987); *People v. Dillon,* 739 P.2d 919 (Colo.App.1987).

### A.

In assessing whether counsel's conduct was below the level of a reasonably competent attorney, we are mindful that a defendant is entitled to a pretrial investigation of sufficient thoroughness to reveal facts relative to guilt and/or penalty. *See People v. Norman, supra; see also People v. White,* 182 Colo. 417, 514 P.2d 69 (1973). Thus, counsel has a duty to make a reasonable investigation or "to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington, supra.* A particular decision not to investigate should be assessed for reasonableness in light of all the circumstances, giving substantial deference to counsel's judgments. *Strickland v. Washington, supra.*

■ Here, we conclude that counsel's performance in failing to investigate thoroughly the background of the key prosecution witness fell below the level of a reasonably competent attorney. We expressly disapprove of counsels' arrangement to share the results of divided pretrial investigation. Each counsel has an independent duty to conduct a reasonable investigation, and this duty cannot be circumvented or delegated to one who, in many respects, stands in the position of opposing counsel. The failure of counsel to investigate the background of D'Prero, the key prosecution witness here, cannot be considered reasonable, especially in light of the fact that minimal diligence would have uncovered the information at issue. Accordingly, we find that counsel's conduct deprived defendant of the reasonable investigation to which he was entitled.

### B.

■ In order to show prejudice, defendant must demonstrate that, under the totality of the circumstances, there is a reasonable probability that if a proper investigation had been conducted then the trial would have culminated in a different result. *See People v. Dillon, supra.* Rea-

sonable probability is probability sufficient to undermine a rational person's confidence in the result of the trial. *See People v. Dillon, supra.* The defendant has not borne his burden in this regard.

First, in determining whether defendant was afforded a fair trial, we deem it unwise to base our decision on the eventual result of a co-defendant's trial. Defendant essentially asks this court to compare the evidence in Borrelli's trial with that in his, and then to determine the reason that one jury acquitted Borrelli while another convicted the defendant. Even if we accepted this procedure as proper, defendant has failed to provide an adequate record to do so.

There is nothing in the record before us that would enable us to review the entire proceedings of Borrelli's second trial. Thus, it cannot be said, as defendant asserts, that Borrelli's acquittal was based solely upon the evidence defendant was denied. Any conclusion of this kind would be pure speculation.

As well, the record reveals substantial independent, unbiased corroborating evidence of D'Prero's testimony regarding the events of the night before and the morning of the murder. Therefore, the evidence defendant failed to discover had limited value.

Finally, as defense counsel has conceded, the evidence of D'Prero's mental condition went solely to the issue of his credibility, and could only have been used for impeachment by defendant's trial counsel. Newly discovered evidence must not be merely cumulative or impeaching, *see People v. Arevalo,* 725 P.2d 41 (Colo.App.1986), and this evidence was only that. Hence, we conclude that the absence of the evidence concerning D'Prero's mental condition has not been shown to be prejudicial to defendant and does not form a basis for reversing the judgment of conviction.

### II.

Defendant next contends that his counsel's failure to appeal the denial of that portion of the new trial motion dealing with the post-trial discovery of D'Prero's mental history operated to deny him his right to

effective assistance of appellate counsel. This issue is moot because of our determination that this evidence did not meet the requirements of newly discovered evidence so as to entitle defendant to a new trial. *See People v. Arevalo, supra.*

### III.

Defendant also contends that the trial court erred in failing to consider those issues which were raised on defendant's direct appeal. We find no error.

As a matter of right, every person convicted of a crime is entitled to one appeal. *See* § 16–12–101, C.R.S. (1986 Repl.Vol. 8A); *see also In re Petition of Griffin,* 152 Colo. 347, 382 P.2d 202 (1963). Once a claim has been raised and disposed of on appeal, it cannot be raised again in a later Crim.P. 35 motion. *See People v. Johnson,* 638 P.2d 61 (Colo.1981). A claim has been raised and disposed of when it has been fully and finally litigated. A claim has been fully and finally litigated when the highest state court to which an applicant can appeal as of right has ruled on the merits of the claim. *People v. Billips,* 652 P.2d 1060 (Colo.1982).

In the present case, the trial court correctly ruled that it was precluded from considering issues previously raised on direct appeal. It is undisputed that defendant's contention concerning the admission of certain hearsay statements was previously raised and ruled upon in his direct appeal. Accordingly, defendant is precluded from re-litigating the issue now.

Citing ABA, *Standards Relating to Post-Conviction Remedies,* Standard 6.1 (1967), defendant argues that, in the interests of justice, this court should reconsider its previous ruling on the hearsay issue. Specifically, defendant contends that the same hearsay statements admitted in his trial were held to be reversible error in Borrelli's trial. We disagree.

Initially, we point out that Borrelli's conviction was reversed because of juror misconduct. *See People v. Borrelli, supra.* In holding that it was error to admit the hearsay statements, this court was addressing issues which could have possibly occurred on retrial. Thus, contrary to defendant's assertion, this court did not address whether the decision to exclude the evidence was reversible error.

Furthermore, we do not agree that justice requires a re-litigation of the issue. The statements complained of here were made by the deceased victim and concerned his fear of Mr. Borrelli. Thus, the prejudicial effect to Borrelli was apparent, whereas any prejudice to the defendant was purely speculative. Therefore, although based on similar factual predicates, Borrelli's appeal and defendant's appeal presented two entirely different legal issues. This difference in the significance of similar evidence, as well as its prejudicial effect, illustrates the impropriety of comparing the results of separate proceedings in determining whether defendant was afforded a fair trial.

### IV.

Defendant's remaining contentions dealing with the court's response to a jury question, the jury instructions, and the denial of his confrontation rights are without merit.

Order affirmed.

PIERCE and KELLY, JJ., concur.