The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Robert M. KENNY, Defendant–Appellant.

No. 96CA0840.

Colorado Court of Appeals, Div. I.

Nov. 24, 2000.

As Modified on Denial of Rehearing Jan. 25, 2001.

Certiorari Denied Sept. 10, 2001.

Ken Salazar, Attorney General, Laurie A. Booras, First Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Robert M. Kenny, appeals the judgment of conviction entered following a jury verdict finding him guilty of second degree burglary and first degree sexual assault. He also appeals the trial court's order denying his Crim.P. 35(c) motion which alleged he had received ineffective assistance of counsel. We affirm the judgment of conviction, vacate the order, and remand the cause for a hearing on the Crim.P. 35(c) issues.

The prosecution's evidence indicated that on August 25, 1988, the victim was asleep in her bed when she was awakened and sexually assaulted by an intruder. During this incident, the victim's husband, from whom she was separated, came to the house. When the victim heard the sound of his truck in the driveway, she began to scream. He broke down the door and rushed into the bedroom, whereupon the intruder shouted, "She invited me over." The victim replied, "You liar, you liar." The intruder then claimed the victim had "picked him up at a bar." The intruder ran out of the house; the victim's husband chased him, but lost sight of him.

The police arrived shortly thereafter, and the victim told them her assailant was the man who lived in the house on the "front property" next to her home. They summoned defendant from inside that house and asked the victim's husband to identify him. Although he stated that, physically, defendant "looked like" the assailant, he was unable to make a positive identification.

The police also asked the victim to make an identification. First, she said, "I don't know." However, she testified at trial that, as she was walking away from defendant, she had told police, "I know that was him, I know he did it. I am absolutely positive."

No police officer testified to having heard the latter statements. The investigating detective's report stated the victim could not identify defendant as her assailant. Although defendant was questioned that night, he was released and no charges were filed at that point.

A few days after the incident, defendant moved from his house. He was arrested in Rhode Island in 1994 and returned to Colorado for trial. His first trial ended in a mistrial, but a second trial resulted in the convictions at issue here.

Defendant was represented by the same attorney at both trials. In the interim, that attorney signed a joint petition for his immediate suspension from the practice of law, and, after defendant's second trial, the attorney was disbarred. *See People v. Mundis,* 929 P.2d 1327 (Colo.1996).

After defendant commenced this appeal, the case was remanded at his request for the trial court to consider his Crim.P. 35(c) motion for postconviction relief based upon trial counsel's alleged ineffectiveness. The trial court denied the motion without a hearing.

## DIRECT APPEAL

### I.

■ Defendant contends the trial court committed reversible error by not making findings of fact concerning the merits of his motion to suppress the anticipated identifications of him by the victim and her husband at trial. We disagree.

■ "In evaluating the totality of circumstances to determine whether there is an independent basis for an in-court identification, five factors are to be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the time which has elapsed between the crime and the confrontation." *People v. Walker,* 666 P.2d 113, 119 (Colo.1983).

Defendant's motion asserted that, because the victim and her husband had neither made a positive identification at the crime scene nor had they been shown a photographic lineup, and because over seven years had elapsed since the date of the alleged offense, it would be "highly prejudicial" to allow the victim and her husband to identify him at trial.

After a hearing, during which defense counsel argued the applicability of the *Walker* factors to the facts, the trial court denied the motion without making explicit findings on each of those factors.

While the entry of findings would have been useful, the court did make specific reference to the *Walker* holding, and such reference convinces us that the trial court did not commit reversible error. The record clearly shows the trial court considered defendant's written motion, conducted oral argument on the facts and issues raised, and evaluated those facts and issues in light of the pertinent law before making its ruling.

Thus, we reject defendant's contention.

### II.

■ Defendant next asserts the trial court abused its discretion in denying his challenge for cause to a prospective juror who had been sexually assaulted as a child. We disagree.

We reject the People's assertion that defendant's failure to exercise a peremptory challenge on this juror deprives him of standing to raise the argument. *Morrison v. People,* 19 P.3d 668 (Colo.2000).

■ The standard of review of a trial court's ruling on a challenge for cause to a prospective juror is whether the trial court abused its discretion, *Carrillo v. People,* 974 P.2d 478 (Colo.1999), and the entire *voir dire* of the prospective juror must be examined. *See People v. Abbott,* 690 P.2d 1263 (Colo. 1984). We accord great deference to the trial court's rulings on challenges for cause because such decisions turn on an assessment of the prospective juror's credibility, demeanor, and sincerity. *See People v. Russo,* 713 P.2d 356 (Colo.1986).

Here, the prosecutor, defense counsel, and the trial court questioned the prospective juror extensively. Although she indicated her past experiences made her "very sensitive" to issues of sexual assault, she stated that she "always" made an effort to be fair, that she could and would follow the trial court's instructions and put her personal feelings aside, that she would not require defendant to prove his innocence, and that she could return a verdict of not guilty.

In denying defense counsel's challenge for cause, the trial court stated: "I really made an effort. Had she really wanted to get out of this she could have said so when I asked

her if she could be fair. It was clear she was able to separate the two issues. And even though she's had this experience as a child, it was clear to me in both her words and about the way that she expressed those words, she really could put those aside and be a fair juror...."

The trial court's findings, when viewed in light of the entire *voir dire* examination of the prospective juror, show no abuse of discretion. The questions asked were pointed and specific concerning the relevant issues of bias and fairness, and the prospective juror's answers were equally direct and candid. The trial court's findings demonstrate its evaluation not only of the spoken words but also of the pertinent factors of credibility, demeanor, and sincerity. This was an appropriate exercise of discretion, and we will not disturb it on review.

## III.

■ Defendant argues that, because testimony concerning the serious medical condition of the victim's four-year-old son was irrelevant and unduly prejudicial, the trial court erred in allowing it. We do not agree.

■ Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *People v. Gibbens*, 905 P.2d 604 (Colo.1995). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v. District Court*, 785 P.2d 141 (Colo.1990); CRE 403. Unfair prejudice refers to an undue tendency on the part of admissible evidence to suggest to the jury an improper basis for its decision. *People v. Nuanez*, 973 P.2d 1260 (Colo.1999).

■ Trial courts are vested with broad discretion in making evidentiary rulings. *People v. Ibarra*, 849 P.2d 33 (Colo.1993). On review, we must give the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Gibbens, supra*. Absent an abuse of discretion, a trial court's ruling concerning

the relative probative value and prejudicial impact of the evidence will not be disturbed. *People v. Dunlap*, 975 P.2d 723 (Colo.1999).

■ To show that a court abused its discretion by erroneously admitting evidence, a party must show that the court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

Here, the trial court overruled defense counsel's objection and determined that, while the evidence had "marginal probative value," it was relevant to give content and context to the assailant's statement that the victim had "picked him up at a bar."

We cannot say that this decision was manifestly arbitrary, unreasonable, or unfair. Since the medical condition of the victim's son necessitated that he receive close supervision, and since that evidence counteracted the assailant's statement that the victim had picked him up at a bar, the evidence was relevant. Also, the trial court properly weighed the probative value of the limited testimony against the possibility of its unfair prejudice.

Moreover, the jury was instructed that neither sympathy nor prejudice should influence its decision, and defendant has not overcome the presumption that the jury followed this instruction. *See People v. Moody*, 676 P.2d 691 (Colo.1984).

Thus, defendant's argument is unavailing.

## IV.

■ Defendant next contends that, because the trial court denied his right to a fair trial by not, on its own motion, prohibiting the victim from giving nonresponsive answers to questions from both counsel, reversal is required.

■ However, prejudice which may accrue from a nonresponsive answer may be cured by the court's instruction to disregard the objectionable portion. *People v. Carr*, 541 P.2d 104 (Colo.App.1975)(not selected for official publication). Such an instruction was given here, and the record contains no indica-

tion the jury did not follow that directive. Consequently, reversal is not required.

## V.

Defendant asserts several of the prosecutor's statements during closing argument, taken individually and cumulatively, require reversal of his conviction. We do not agree.

■ When, as here, a defendant does not object to a prosecutor's comments at trial, we review the statements under a plain error standard. *See People v. Foster*, 971 P.2d 1082 (Colo.App.1998). That is, we assess whether the comments so affected the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Walker v. People*, 932 P.2d 303 (Colo.1997).

### A.

■ Defendant argues the prosecutor made numerous inappropriate references to the medical condition of the victim's son in a manner calculated to evoke sympathy for the victim and to engender ill-will towards defendant. We disagree.

These references were few in number and centered around the special care requirements of the child and his daily routine. Moreover, in rebuttal closing argument, the prosecutor told the jury that this medical condition had "limited relevance."

We cannot say these comments cast serious doubt on the reliability of the judgment of conviction and, thus, we reject defendant's assertion.

### B.

■ Defendant also maintains the prosecutor's statements that "every fox will find a way to get into the hen house," and the reference to defendant's home as his "lair" dehumanized him and require reversal. We find no basis for reversal.

Because these statements diverted the jury's proper focus, denigrated defendant's human status, and diluted the dignity of the proceedings and the prosecutor's proper role, they were improper. *See People v. Hernandez*, 829 P.2d 394 (Colo.App.1991).

However, because the references were isolated, we cannot say that the statements were so pervasive as to constitute plain error.

### C.

■ Defendant maintains reversal is required because, in rebuttal closing argument, the prosecutor characterized a portion of defense counsel's closing argument as a "smoke screen." We disagree.

■ Prosecutors are allowed considerable latitude in responding to defense counsel's arguments. *People v. Vialpando*, 804 P.2d 219 (Colo.App.1990).

Here, defense counsel argued that the victim's husband had not looked at other houses in the area to try to find the assailant. The prosecutor replied that that argument was a "smoke screen."

This response does not require reversal.

### D.

■ The prosecutor's concluding statement was: "And we ask you to bring justice to [the victim] and the people of the State of Colorado, that has been [eluding] all of us since August of 1988." Defendant argues this comment was an improper appeal to the jury to consider the wishes of the community and, as such, it requires reversal. We do not agree that reversal is warranted.

Although the prosecutor's remark was inadvisable because it improperly referred to the wishes of the community, *see Wilson v. People*, 743 P.2d 415 (Colo.1987)(fn.8) and arguably injected improperly the prosecutor's personal opinion into the case, *see* A.B.A., *Standards for Criminal Justice* Standard 3–5.8 (1993 ed.), it did not undermine the fundamental fairness of the trial. Therefore, it did not constitute plain error. *See People v. Simbolo*, 188 Colo. 49, 532 P.2d 962 (1975); *People v. Hernandez, supra.*

### E.

■ While we do not condone the prosecutor's sometimes overzealous rhetoric, we

are not convinced that the statements, taken cumulatively, so affected the fundamental fairness of defendant's trial as to cast serious doubt on the reliability of the judgment of conviction. *See People v. Jones,* 832 P.2d 1036 (Colo.App.1991). Thus, we reject defendant's argument that cumulative error necessitates reversal.

## CRIM. P. 35(c)

### VI.

In regard to defendant's appeal of the denial of his Crim.P. 35(c) motion, we conclude that further proceedings are required.

### A.

 One area that must be addressed on remand is defendant's assertion that it was error for the trial court to rule that trial counsel's continued representation, after being suspended from the practice of law, did not constitute ineffective assistance of counsel, as a matter of law.

 Defendants have a constitutional right to the effective assistance of counsel. Generally, this requires a defendant to establish that counsel's representation was deficient and that a reasonable probability existed that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Davis,* 759 P.2d 742 (Colo. App.1988).

However, in some instances, a defendant is not required to meet this test to prove that his or her Sixth Amendment right to counsel was violated. *See* J. Zitter, Annotation, *Criminal Defendant's Representation By Person not Licensed to Practice Law as Violation of Right to Counsel,* 19 A.L.R. 5th 351 (1994).

For instance, cases uniformly hold that, if a defendant is represented by a lay imposter, *i.e.,* one who claims to be a lawyer but who is not, then such defendant has been deprived of the constitutional right to counsel. This is known as the *per se* rule of ineffectiveness. *See Solina v. United States,* 709 F.2d 160 (2d Cir.1983); *People v. Allen,* 220 Ill.App.3d 772, 162 Ill.Dec. 872, 580 N.E.2d 1291 (1991).

"The principle applied in such cases is that one never admitted to practice law and therefore who never acquired the threshold qualification to represent a client in court cannot be allowed to do so, and no matter how spectacular a performance may ensue, it will not constitute effective representation of counsel for purposes of the Sixth Amendment." *United States v. Mouzin,* 785 F.2d 682, 697 (9th Cir.1986).

At the other end of the spectrum, many courts have refused to reverse a defendant's conviction solely because the attorney was not fully licensed at the time of representation. *See Vance v. Lehman,* 64 F.3d 119 (3d Cir.1995); *State v. Green,* 274 N.J.Super. 15, 643 A.2d 18 (1994). The rationale underlying these cases is that, because a lawyer must possess the specialized knowledge inherent in the practice of law, as demonstrated by having obtained the necessary educational and examination prerequisites for licensure, a lack of full, current licensure does not, by itself, demonstrate the absence of the threshold qualifications guaranteed by the Sixth Amendment. *See People v. Allen, supra.*

In some instances, courts have used a substantive/technical distinction in their analysis. Thus, for example, if an attorney's loss of full licensure resulted from a technical circumstance such as failure to register with the Board of Bar Overseers, *Commonwealth v. Thomas,* 399 Mass. 165, 503 N.E.2d 456 (1987), or failure to take the oath of admission after graduation from law school and passage of the bar examination, *see Wilson v. People,* 652 P.2d 595 (Colo.1982), the Sixth Amendment's concerns were not implicated. Conversely, most courts have found a denial of the Sixth Amendment right to counsel if the loss of full licensure resulted from circumstances which evidenced unfitness to practice law and if counsel's representation of the defendant was deficient. *See State v. Green, supra; People v. Mitchell,* 454 Mich. 145, 560 N.W.2d 600 (1997).

We reject defendant's contention that a *per se* rule should apply here. As the Supreme Court has expressed:

[Per se rules] are designed to avoid the costs of excessive inquiry where a per se

rule will achieve the correct result in almost all cases. . . . Per se rules should not be applied, however, in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time.

*Coleman v. Thompson,* 501 U.S. 722, 737, 111 S.Ct. 2546, 2558, 115 L.Ed.2d 640, 648 (1991).

Thus, a *per se* rule may be appropriate in situations where defendants are represented by masqueraders who have not met the minimal requirements for admission to the bar, because such a rule would reach the correct result of ensuring the minimum requirements of the Sixth Amendment right to counsel almost all of the time. However, the same cannot be said for application of a *per se* rule in situations where properly licensed attorneys have been suspended or disbarred.

■ Suspension or disbarment can result from ethical misconduct or other bad behavior that does not necessarily indicate a lack of knowledge of the law. *In re Johnson,* 1 Cal.4th 689, 4 Cal.Rptr.2d 170, 822 P.2d 1317 (1992). Thus, the rationale for a *per se* rule in such circumstances loses its vitality.

While suspension or disbarment can also result from professional incompetence because of the wide range of conduct that can be so labeled, several courts have refused to adopt a *per se* rule of ineffectiveness. Indeed, many federal courts refuse to apply a *per se* rule even though the attorney had lost his or her license in the predicate bar state for reasons relating to competence. *See United States v. McKinney,* 53 F.3d 664 (5th Cir.1995). Instead, those courts examine the quality of the attorney's representation of the defendant. *See Vance v. Lehman, supra; United States v. Stevens,* 978 F.2d 565 (10th Cir.1992); *Waterhouse v. Rodriguez,* 848 F.2d 375 (2d Cir.1988); *United States v. Mouzin, supra; United States v. Merritt,* 528 F.2d 650 (7th Cir.1976).

Many state courts have also rejected a *per se* rule of ineffectiveness and have adopted a case-by-case approach for determining whether the loss of full licensure renders an attorney ineffective as a matter of law. *See*

*Cornwell v. Dodd,* 270 Ga. 411, 509 S.E.2d 919 (1999); *Commonwealth v. Thibeault,* 28 Mass.App.Ct. 787, 556 N.E.2d 403 (1990); *People v. Pubrat,* 451 Mich. 589, 548 N.W.2d 595 (1996); *State v. Smith,* 476 N.W.2d 511 (Minn.1991); *State v. Green, supra; People v. Allen, supra; State v. Allen,* 121 Ohio App.3d 666, 700 N.E.2d 682 (1997); *State v. Johnson,* 64 S.D. 162, 265 N.W. 599 (1936); *Cantu v. State,* 930 S.W.2d 594 (Tex.Crim. App.1996).

■ We agree with these latter courts and hold that, if an attorney is less than fully licensed, the Sixth Amendment's concerns are best satisfied by applying a case-by-case approach. We also reject the technical/substantive distinction because the dispositive issue is the attorney's effectiveness as counsel, rather than the nomenclature used to describe the disciplinary proceedings.

As the court explained in *People v. Pubrat, supra,* 451 Mich. at 599, 548 N.W.2d at 597:

Either administrative or substantive discipline may reflect on an attorney's professional competency, and either may also reflect shortcomings that are purely personal. For example, the failure to pay bar dues may be an intentional violation of the rule which demonstrates that the attorney does not accord proper weight to the rules. That failure also may raise the possibility that an attorney will neglect a client's interests as well because the attorney is unable or unwilling to keep track of obligations. Thus, administrative discipline may reflect on an attorney's fitness to practice law, while substantive discipline will not always demonstrate professional incompetence. For example, an assaultive offense committed by an attorney reveals personal flaws, but does not necessarily reflect on the attorney's professional capacities.

■ The People ask that we adopt the intermediate test set out by the Texas Court of Criminal Appeals in *Cantu v. State, supra.* In that case, the court adopted a multi-factored analysis to determine whether the reasons for an attorney's discipline reflect so poorly upon the attorney's competence that it may reasonably be inferred that the defen-

dant's Sixth Amendment rights were violated as a matter of law. We grant the People's request, recognizing, as did the *Cantu* court, that this inquiry is totally separate from the traditional *Strickland v. Washington, supra,* analysis since, if trial counsel is found to be incompetent as a matter of law, there is no need to inquire into trial errors or prejudice and defendant is entitled to a new trial for this reason alone.

The *Cantu* court enumerated several factors including, but not necessarily limited to: "(1) severity of the sanction (suspension versus disbarment; length of suspension), (2) the reasons for the discipline, (3) whether the discipline was based upon an isolated incident or a pattern of conduct, (4) similarities between the type of proceeding resulting in discipline and the type of proceeding in question, (5) similarities between kinds of conduct resulting in the attorney's discipline and any duties or responsibilities the attorney had in connection with the proceeding in question, (6) temporal proximity between the conduct for which the attorney was disciplined and the proceeding in question, and (7) the nature and extent of the attorney's professional experience and accomplishments." *Cantu v. State, supra,* 930 S.W.2d at 602–603.

Evaluation of the relevant factors necessarily requires a fact-intensive inquiry. Consequently, defendant and the People should have the opportunity to present their evidence and arguments concerning these factors and to argue what, if any, other factors would be appropriate for consideration. *Cf. Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).

Here, the trial court did not conduct a hearing on defendant's Crim.P. 35(c) motion. It refused the request for hearing because of its holding that "the inquiry should focus on the lawyer's actual performance." However, our adoption of the test in *Cantu v. State, supra,* necessitates that a hearing be held.

We reject defendant's argument that he should be allowed access to the file of the disciplinary prosecutor relating to trial counsel's discipline because in earlier proceedings regarding this case, the supreme court by order denied defendant's motion requesting that access. We must abide by that ruling. If defendant believes the circumstances have changed since his previous request, he may again petition the supreme court for access to that file.

Following the hearing and after evaluation of the evidence in light of what it deems to be the relevant factors, if the trial court determines that trial counsel was incompetent as a matter of law, it must vacate defendant's judgment of conviction and schedule a new trial. Conversely, if the trial court determines that trial counsel was not incompetent as a matter of law, no new trial need be held for that reason. However, in either event, the trial court should take evidence, hear argument, and make findings and conclusions concerning this issue and the remaining issues raised in defendant's Crim.P. 35(c) motion.

### B.

Defendant next contends his Sixth Amendment right to counsel was violated because trial counsel had a conflict of interest in that his own interests relative to the pending disciplinary proceedings interfered with his representation of defendant. We conclude that further proceedings are required on this matter as well.

A conflict of interest is defined as:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and .

(2)the client consents after consultation....

(c) For the purposes of this Rule, a client's consent cannot be validly obtained in those instances in which a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances of the particular situation.

Colorado Rules of Professional Conduct 1.7.

If trial counsel's ability to represent a defendant is materially limited by his or her own interests, a defendant may be deprived of the right to effective representation of counsel. *See People v. Edebohls,* 944 P.2d 552 (Colo.App.1996).

■ A defendant bears the burden of demonstrating that counsel actively represented conflicting interests, and that an actual conflict of interest adversely affected counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Defendant must point to specific instances in the record to suggest actual impairment of his interest. *United States v. Khoury,* 901 F.2d 948 (11th Cir.1990). "More specifically, the defendant must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict." *Vance v. Lehman, supra,* 64 F.3d at 124.

■ If a defendant meets this burden, the requisite degree of prejudice is established and he or she does not have to demonstrate that the result of the trial would have been different without the conflict. *Strickland v. Washington, supra.*

In the event a defendant establishes that trial counsel actively represented conflicting interests and that that conflict of interest adversely affected trial counsel's conduct, the remedy would normally be a vacation of the judgment of conviction and the grant of a new trial. However, here, a significant question remains whether defendant knew of trial counsel's suspension and, knowing of such suspension, waived any claim of conflict of interest.

■ A defendant generally has the right to conflict-free assistance of counsel. *Rodriguez v. District Court,* 719 P.2d 699 (Colo. 1986). However, although a defendant may assert that he or she received ineffective assistance of counsel when counsel has been found to have a conflict of interest, ineffective assistance will not be found if the defendant waived the right to conflict-free representation and if that waiver was made with full knowledge of the actual conflict. *People v. Castro,* 657 P.2d 932 (Colo.1983).

■ The prosecution bears the burden of establishing that the defendant was aware of the conflict and thereafter voluntarily, knowingly, and intelligently relinquished the right to conflict-free representation. *People v. Martinez,* 869 P.2d 519 (Colo.1994).

Normally, the conflict of interest issue arises either before or during trial. *See Rodriguez v. District Court, supra; People v. Castro, supra; Armstrong v. People,* 701 P.2d 17 (Colo.1985); *People v. Martinez, supra.* In those instances, appellate courts have analyzed the trial court's advisement to the defendant to ascertain whether defendant's waiver of the conflict was voluntary, knowing, and intelligent. Then, they have engaged in a balancing test to determine whether, under the circumstances presented, public confidence in the integrity of the judicial process outweighed the defendant's interest in being represented at trial by a particular attorney whose effectiveness may have been impaired by the existence of a conflict of interest. *Rodriguez v. District Court, supra; People v. Castro, supra.*

Both defendant and the People have asked that we remand the case for the trial court to make findings of fact and enter conclusions of law on the waiver issue. We grant those requests and remand the cause for the trial court to conduct a hearing and, in the exercise of its discretion, *People v. Martinez, supra,* to make findings of fact and enter conclusions of law on the conflict of interest and waiver issues.

If the trial court determines a conflict of interest existed and that the conflict adversely affected trial counsel's conduct, and if the court determines that defendant voluntarily, knowingly, and intelligently waived his right to conflict-free representation, then defendant's argument must fail. Similarly, if the trial court determines that no such conflict of interest existed, the same result would obtain. However, if the trial court determines that a conflict of interest existed and that defendant did not waive it voluntarily, knowingly, and intelligently, defendant's judgment of conviction must be vacated and a new trial should be conducted.

C.

■ Finally, defendant contends the trial court erred in denying his Crim.P. 35(c) motion on the merits without conducting a hearing. We agree that a hearing should be held.

■ A defendant should receive a hearing on his or her Crim.P. 35(c) motion unless

the motion, files, and record of the case clearly establish that the defendant's claims are without merit. *White v. Denver District Court,* 766 P.2d 632 (Colo.1988).

Because defendant's motion asserted facts which may have showed that trial counsel's actions fell below the norm and which may have altered the outcome of the trial, *see Strickland v. Washington, supra,* and *People v. Davis, supra,* and because the trial court did not examine trial counsel's performance under the heightened scrutiny required by the analyses set out here on the conflict of interest and *per se* ineffective representation issues, we conclude that the hearing should encompass an opportunity for defendant to present evidence and argument on his assertions of ineffective assistance.

The judgment of conviction is affirmed, order is vacated, and the cause is remanded for a hearing on defendant's Crim.P. 35(c) motion.

NIETO, J., concurs

RULAND, J., specially concurs.

Judge RULAND specially concurring.

I concur in the result reached in Part I of the majority opinion. I write separately relative to Part II of the opinion because I believe the threshold issue to be addressed is defendant's knowledge concerning his representation by a suspended attorney.

In support of its motion to remand the case to the trial court for factual findings, the prosecution attached an affidavit by defendant's former trial counsel in which he states that: "Mr. Kenny was aware that my license to practice law was under suspension for the second trial." He also states: "Mr. Kenny preferred to risk my representation even though I was under suspension." As pertinent here, he finally states that: "Mr. Kenny was aware that one possible consequence of my representation in the second trial would be that he could get another trial due to my misconduct."

I recognize that defendant disputes the credibility of this affidavit. However, if, after an evidentiary hearing, the trial court determines that the contents of the affidavit are accurate, then in my view the issues concerning ineffective assistance of counsel or waiver of conflict free counsel should not be considered further. I reach this conclusion based upon the invited error doctrine. This doctrine provides that a party may not assert on appeal any error that he has invited or injected into the case. *People v. Zapata,* 779 P.2d 1307 (Colo.1989). This doctrine is especially applicable when that party is seeking, by injecting the error, to preserve the right to a second trial if the result in the first is not satisfactory. *See Hansen v. State Farm Mutual Automobile Insurance Co.,* 957 P.2d 1380 (Colo.1998); *Morgan County Department of Social Services v. J.A.C.,* 791 P.2d 1157 (Colo.App.1989).

If, on the other hand, the court determines that defendant was in fact unaware of trial counsel's status, then I would agree that assessment of counsel's performance under the test set forth in *Cantu v. State,* 930 S.W.2d 594 (Tex.Crim.App.1996) is appropriate as is the consideration of the remaining issues raised in the Crim.P. 35(c) motion.