**Terry L. BENFORD, Movant–**
**Appellant,**

v.

**STATE of Missouri, Respondent–**
**Respondent.**

**No. 23930.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 2001.

Amy M. Bartholow, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

GARRISON, Presiding Judge.

Terry L. Benford ("Movant") was charged with one count of second degree assault in violation of Section 565.060.[1] Pursuant to a plea agreement, Movant pled guilty, and was sentenced. Movant, thereafter, pursuant to Rule 24.035[2] filed a motion for post-conviction relief, which was later amended. The motion court denied relief following an evidentiary hearing. Movant appeals.

At the plea hearing on January 26, 2000, Defendant pled guilty, and the trial court accepted the plea. The State then recommended that Movant serve a five-year sentence on the second-degree assault charge. That sentence was to be served concurrently with a sentence in another unrelated matter, and the State also agreed to dismiss pending misdemeanor charges and to refrain from filing felony bad check charges. The trial court told Movant that it intended to follow the recommendation and announced that it was sentencing Movant to five years. Movant's counsel

---

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

**2.** All rule references are to Missouri Rules of *Criminal Procedure (2001)*, unless otherwise indicated.

reminded the trial court that they had agreed to pass sentencing until the next law day. The trial court told Movant that it was prepared to sentence him at that time and to follow the plea bargain, but that it understood that he wanted the trial court to wait until February 9, 2000, to do so. Movant agreed with the trial court's statement. The trial court then explained that if Movant failed to appear for sentencing on February 9, or if he committed any new offense and was arrested, that the trial court would no longer feel bound by the recommendation of five years and instead would sentence him to seven years. The trial court then announced that Movant could remain free until sentencing.

Movant appeared for sentencing on February 9, 2000, but Movant's counsel, Shawn Ellis ("Ellis"), did not appear. The trial court informed Movant that his attorney had been suspended from the practice of law and that he either needed to find another attorney or the court would appoint him one. Ultimately, the trial court appointed a public defender to Movant's case.

On February 23, 2000, Movant again appeared before the trial court. At that time, the State announced that it had originally agreed to recommend a term of five years, but that in the interim, Movant had committed a new offense. Based upon the new offense, the State agreed to recommend a term of seven years on the assault charge, dismiss the new charges, and not file bad check charges against Movant. The trial court then sentenced Movant to a term of seven years. Movant was not given the opportunity to withdraw his plea before the trial court sentenced him to seven years, rather than five years.

Movant filed a timely Rule 24.035 motion for post-conviction relief, which was later amended. The amended motion alleged that the trial court violated due process by sentencing Movant in excess of the five-year plea agreement. The motion further alleged that Movant received ineffective assistance of counsel when Ellis failed to inform him that he had been under investigation by the Missouri Bar, and was, in fact, suspended from the practice of law and continued to represent Movant at the plea hearing when he should have moved to withdraw.

Following an evidentiary hearing, the motion court denied Movant's motion. The motion court concluded that prior to his sentencing on February 23, 2000, Movant accepted "a new plea agreement," that he knew he was going to be sentenced to seven years, and that he did not ask to withdraw his plea. The motion court further found that representation by an attorney whose license has been suspended is not *per se* ineffectiveness; that neither the trial court, Ellis, or Movant knew that the Supreme Court had suspended Ellis' license the day before the plea; and that there was no evidence that the suspension was related to Movant's case or that the suspension affected Ellis' performance at the plea proceeding. The motion court further found that since Movant had entered into "a new plea agreement" with different counsel, there was no prejudice. Movant appeals from the motion court's ruling.

 Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(k); *Leisure v. State*, 828 S.W.2d 872, 873–74 (Mo. banc 1992). A motion court's findings are clearly erroneous if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Segraves v. State*, 992 S.W.2d 296, 300 (Mo.App. S.D.1999).

■ In his first point on appeal, Movant contends that the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief because the judgment and sentence imposed were in violation of Rule 24.02(d)(4) in that the sentence was not that contemplated by the terms of the original plea agreement and the trial court did not allow him an opportunity to withdraw his plea when it determined it would not sentence him according to the original plea agreement.

The record reflects that the trial court accepted Movant's plea of guilty to the charge of second degree assault, finding that it was knowingly, voluntarily, and intelligently made. The trial court then proceeded to question Ellis as to whether Movant had made any plea agreement with the State:

THE COURT: ... Any agreement with the State in this case, [Ellis]?

[ELLIS]: Yes, sir, Your Honor. The State has agreed to recommend five years to run concurrent with a probation revocation in the matter that [Movant's] on probation with. Also the State will agree to dismiss the misdemeanor charges that are pending.

[THE STATE]: Not file those.

[ELLIS]: And not file two potential two charges that he had for felony bad check charges.

THE COURT: All right. Is that the State's recommendation?

[THE STATE]: Yes, Your Honor, it is.

THE COURT: [Movant], you were told that was going to be the recommendation before you entered your plea?

[MOVANT]: Yes, sir.

THE COURT: I intend to follow the recommendation. [Movant], it's the judgment and sentence you be sentenced to the custody of the Missouri Division of Adult Institutions for a term of five years.

[ELLIS]: Excuse me, Judge. We also agreed, with the Court's permission, to pass sentencing until the next law day.

THE COURT: All right. [Movant], I'm prepared to proceed with your sentencing at this time and follow the plea bargain. However, I understand you would like me to wait until February 9 to sentence you.

[Movant]: Yes, sir.

THE COURT: All right. Well, I'm willing to do that but here's what I want to tell you: If you would fail to appear for your sentencing on February 9 or commit any new offense and be arrested between now and then, I wouldn't consider myself any longer bound by the recommendation of five years and have to sentence you to seven. Do you understand?

[Movant]: Yes, sir.

On February 23, 2000, the sentencing hearing was held, and Defendant was sentenced to seven years instead of the original recommendation of five years:

[THE STATE]: ... The State originally agreed to recommend a term of five years. Of course, that was prior to [Movant] committing the new offense that he committed in between the time that he was released for sentencing.

And based upon the new offenses, the State's agreed to recommend a term of seven years and not file the new case.

THE COURT: Now, we've got—you say not file. We've also got a 1596 stealing case here.

[THE STATE]: Yes, sir.

THE COURT: Is that going to be dismissed?

[THE STATE]: Yes, sir.

THE COURT: State recommends seven years in each case?

[THE STATE]: Yes, sir.

\* \* \* \*

THE COURT: Well, in Case No. 399–1246, State versus Benford, it's the judgment and sentence of the Court [sic] [Movant] be sentenced to the custody of the Missouri Division of Adult Institutions for a term of seven years.

The record shows that the trial court warned Movant of the consequences if he failed to appear or committed any new offense prior to sentencing, but that these consequences were only discussed with Movant after the trial court had accepted his plea. A trial court may impose such conditions as part of the plea bargain as a condition of accepting the plea. *Boyd v. State*, 10 S.W.3d 597, 600 (Mo.App. E.D. 2000). However, once the plea has been accepted, such conditions may not be imposed without giving Movant an opportunity to withdraw his plea. *President v. State*, 925 S.W.2d 866, 871 (Mo.App. W.D. 1996). The Supreme Court of Missouri codified this principle in Rule 24.02(d)(4), which states:

> If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

Here, the record shows that Movant was not afforded an opportunity to withdraw his plea once the trial court determined it would not sentence him according to the original plea agreement. The State agrees that the trial court did not follow the dictates of Rule 24.02(d)(4). We therefore reverse the judgment of the motion court and remand the case to the trial court. Upon remand, the trial court may either accept the initial plea agreement and sentence Movant in accordance with the State's recommendation of five years or it may reject the agreement and offer Movant an opportunity to withdraw his plea in accordance with Rule 24.02(d)(4).

With respect to Movant's first point, the trial court has the option of accepting the initial plea agreement and sentencing Movant in accordance with the State's recommendation of five years or rejecting the agreement and offering Movant an opportunity to withdraw his plea. Under his second point, the remedy Movant seeks is to withdraw his plea of guilty. Because of the possible difference in remedies, we proceed to discuss Movant's second point.

In his second point, Movant argues that the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief because he was *per se* denied effective assistance of counsel in that Ellis' license to practice law had been suspended indefinitely at the time he represented Movant at the plea hearing. Alternatively, Movant argues that Ellis' legal assistance was constitutionally defective under the standards enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in that Ellis failed to tell Movant that his license was suspended and that, had Movant known, he would not have pled guilty with Ellis as his attorney.

Ellis represented Movant at the guilty plea hearing on January 26, 2000. On January 25, 2000, the Supreme Court of Missouri had suspended Ellis' license to practice law in Missouri for violating Rules

4–1.3[3] and 4–1.4[4] of the Missouri Rules of Professional Conduct with respect to four clients, Rule 4–1.16(d)[5] of the Missouri Rules of Professional Conduct with respect to two clients, and Rule 4–8.1 of the Missouri Rules of Professional Conduct for failing to respond on multiple occasions to a lawful demand for information from a disciplinary authority. Movant did not learn that Ellis had been suspended from the practice of law until February 9, 2000, when the trial court informed him that he needed to find new counsel.

 The Sixth Amendment guarantees that in a prosecution for a criminal offense, a defendant is constitutionally entitled to the assistance of counsel at all critical stages of the proceedings. *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146, 152 (1984); *Jones v. State,* 747 S.W.2d 651, 653 (Mo.App. E.D.1988). If an accused is deprived of counsel at any of these critical stages, he is entitled to relief without showing that he was prejudiced thereby, as the deprivation of counsel is deemed *per se* reversible error. *United States v. Cronic,* 466 U.S. 648, 658–60, 104 S.Ct. 2039, 2049–50, 80 L.Ed.2d 657, 667–68 (1984). Where counsel has been provided, but the attorney's performance falls below objective standards of reasonable competence, the defendant is entitled to relief if he can prove that the outcome probably would have been different had his attorney provided competent representation.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

It has been held that the Sixth Amendment right to counsel is not satisfied where the defendant was represented by a person who was never licensed to practice law, and in these circumstances, the defendant's deprivation of a licensed attorney is considered *per se* reversible error. *See United States v. Novak,* 903 F.2d 883, 886–87 (2nd Cir.1990); *Solina v. United States,* 709 F.2d 160, 167 (2nd Cir.1983). The principle applied in such cases is that "one never admitted to practice law and therefore who never acquired the threshold qualification to represent a client in court cannot be allowed to do so, and no matter how spectacular a performance may ensue, it will not constitute 'effective representation of counsel' for purposes of the Sixth Amendment." *United States v. Mouzin,* 785 F.2d 682, 697 (9th Cir.1986).

However, in cases similar to Movant's, where a defendant has been represented at trial by an attorney who has been disbarred or was practicing under a suspended license, courts have applied the two-prong *Strickland* analysis to determine whether counsel's representation was, in fact, ineffective. *See United States v. Maria–Martinez,* 143 F.3d 914 (5th Cir.1998) (attorney's suspension based on failure to file documents in connection with an unrelated appeal); *United States v. Stevens,* 978 F.2d 565 (10th Cir.1992) (licensed attorney disbarred without notice); *United States v. Williams,* 934 F.2d 847 (7th Cir.

---

**3.** Rule 4–1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

**4.** Rule 4–1.4 requires a lawyer to keep a client reasonably informed about the status of a matter, to promptly comply with reasonable requests for information, and to explain matters to the extent necessary to allow the client to make informed decisions regarding the representation.

**5.** Rule 4–1.16(d) requires that a lawyer, upon termination of representation, take steps to protect clients interests, such as giving reasonable notice to the client, allowing time for the client to hire other counsel, and surrendering papers and property to which the client is entitled.

1991) (defense counsel's license suspended for neglect of unrelated case); *Waterhouse v. Rodriguez,* 848 F.2d 375 (2nd Cir.1988) (defense counsel disbarred during trial for conduct unrelated to defendant's trial); *People v. Allen,* 220 Ill.App.3d 772, 162 Ill.Dec. 872, 580 N.E.2d 1291 (1991) (defense counsel's license suspended for failure to file appellate brief in unrelated criminal case).

■ Missouri courts have also not adopted a *per se* rule that an attorney is ineffective because he or she is unlicensed at some point during the representation of a client. *See State v. Neely,* 979 S.W.2d 552 (Mo.App. S.D.1998) (no error where counsel was licensed in Arkansas but not licensed in Missouri); *Stott v. State,* 771 S.W.2d 841 (Mo.App. E.D.1989) (declined to adopt *per se* rule that right to counsel is violated when an out-of-state attorney fails to comply with the filing and formal entry of local counsel requirements of Rule 9.03); *Jones,* 747 S.W.2d 651 (fact that an attorney was not licensed for failure to pay bar dues was not *per se* ineffective assistance of counsel).

■ It has been noted that "the infliction of discipline upon an attorney previously qualified and in good standing will not and should not transform his services into ineffective assistance." *Mouzin,* 785 F.2d at 697. As stated in *Mouzin* :

[n]either suspension nor disbarment invites a per se rule that continued representation in an ongoing trial is constitutionally ineffective. Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client who has chosen him. Continued licensure normally gives a reliable signal to the public that the licensee is what he purports to be—an attorney qualified to advise and represent a client. But it is an undeniable fact of experience that lawyers unhappily incur

sanctions ranging from censure to disbarment; that sometimes that discipline flows from revealed incompetence or untrustworthiness or turpitude such as to deserve no client's confidence. All we need hold here is that [whether] a lawyer's services were ineffective [should be considered] on a case [by case], not a per se, basis.

785 F.2d at 698.

■ Based upon this precedent, we conclude that under the facts in the instant case, Movant is not entitled to a *per se* finding of ineffective assistance of counsel. Although Ellis' assistance was not *per se* ineffective, we still examine whether that assistance was in fact ineffective under the two-prong analysis set out in *Strickland.*

■ Under *Strickland,* a criminal defendant seeking post-conviction relief based on a claim of ineffective assistance of counsel must demonstrate that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances and that he was thereby prejudiced. 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. *See also Milner v. State,* 968 S.W.2d 229, 230 (Mo. App. S.D.1998). Because Movant's conviction resulted from a guilty plea, a claim of ineffective assistance of counsel is immaterial except to the extent that it infringes upon the voluntariness and knowledge with which the guilty plea was made. *Hagan v. State,* 836 S.W.2d 459, 463 (Mo. banc 1992); *Bauer v. State,* 949 S.W.2d 248, 249 (Mo. App. S.D.1997). Thus, Movant must show that, but for counsel's errors, he would not have pled guilty and would have instead insisted upon going to trial. *State v. Nunley,* 980 S.W.2d 290, 292 (Mo. banc 1998). There is a strong presumption that counsel's conduct was reasonable under the circumstances. *Bauer,* 949 S.W.2d at 249.

Movant's only claim of ineffectiveness was that Ellis did not tell him that he was under investigation by the Chief Disciplinary Counsel for ethical violations. Movant claims that if he had known that Ellis was under investigation, he "would not have proceeded to plead guilty with [Ellis] as his attorney." Movant, however, does not explain how Ellis' failure to inform him of the disciplinary proceedings affected the voluntariness and understanding with which the plea was made. Movant never suggests that his plea was not knowingly, voluntarily, or intelligently made. Further, he never contends that he would have foregone the plea and proceeded to trial if he had known about Ellis' status. Consequently, Movant's claim of ineffective assistance of counsel is without merit, and his second point must be denied.

With respect to Point I, the judgment of the motion court is reversed and the case is remanded to the trial court. Upon remand, the trial court may either accept the initial plea agreement and sentence Movant in accordance with the State's original recommendation of five years or it may reject the agreement and offer Movant an opportunity to withdraw his plea in accordance with Rule 24.02(d)(4). With respect to Point II, the judgment of the motion court is affirmed.

PARRISH, J., and RAHMEYER, J., concur.